## HUTT & a. *v.* HICKEY.

| 67 | 411 |
| 70 | 454 |
| 67 | 411 |
| 74 | 28 |
| 74 | 173 |
| 74 | 174 |
| f74 | 186 |

Whether a plaintiff having counts in case and in assumpsit for the same cause of action should be required to elect on which count he will proceed, is ordinarily a question of fact to be determined at the trial term.

The execution of a written contract may be a good consideration for an oral contract relating to the same subject-matter.

If it is apparent from the terms of a contract, by which the plaintiff was to cut and haul timber for the defendant, that the parties understood that the defendant had the right to have the timber cut and hauled for him, the contract may be considered as including an implied agreement by the defendant that he has or will procure the right.

For the breach of such an implied agreement, the measure of damages is the difference between the stipulated price and the cost of doing the work, together with compensation for any incidental loss that could be reasonably anticipated by the parties as likely to result therefrom, and that the plaintiff could not avoid by ordinary care; and the expense of necessary preliminary work, and of maintaining workmen and teams in idleness while the plaintiff was investigating the right, may be proper subjects of compensation.

CASE. The declaration contains three counts. In the first the plaintiffs aver that on the 17th day of November, 1890, the defendant bargained with the plaintiffs to cut from certain land in Berlin from 1,200,000 feet to 1,800,000 feet of mill logs, and deliver the same at the Ammonoosuc river at a price of $3 per thousand, and falsely and fraudulently warranted the land to be the property of the defendant, thereby inducing the plaintiffs to enter upon said land for the purpose of removing the lumber as per their contract; that the said land was not the land of the defendant, but of Wright and Eaton, who, on the 7th day of February, 1891, had the plaintiffs enjoined from operating upon it, by order of the court, whereby the plaintiffs were damaged.

The second count avers that the plaintiffs were and for a long time had been engaged in the business of lumbering, whereby they made gains and profits; that the defendant was in possession of a saw-mill and engaged in manufacturing lumber, and, being desirous of supplying the mill with logs, on the 17th day of November, 1890, falsely, fraudulently, and deceitfully represented to the plaintiffs that he was the lawful owner and possessor of certain lands in the town of Berlin, and had the right to cut the trees growing thereon and convert them into lumber; that the plaintiffs, confiding in said representations, contracted with the defendant to cut and haul from said lands to the river, during the winter season of 1890-'91, from 1,200,000 feet to 1,800,000 feet of logs at a price of $3 per thousand; that in

consequence of those representations and this contract the plaintiffs expended large sums of money in and about the business of cutting and hauling said logs, and entered upon said lands in pursuance of said agreement; that the defendant was not the lawful owner and possessor of said lands, but that Wright and Eaton were, who, on the 7th day of February, 1891, by an order of the court, had the plaintiffs enjoined from operating said land, to their damage, etc.

The third count, not a part of the original writ, but filed by leave of court at a subsequent time, is as follows:

"In a plea of the case for that whereas, heretofore, on the 17th day of November A. D. 1890, at Stark, in said county of Coös, the said defendant contracted with the said plaintiffs in the words and figures following, viz.:

"'Memorandum of agreement made and concluded this 17th day of November, 1890, by and between Nelson Hutt and C. H. Wentworth, on the one part, and E. Hickey on the other part, all live in Stark, in the county of Coös, state of New Hampshire. The said Nelson Hutt and C. H. Wentworth promise and agree to cut, haul and deliver from one million, two hundred thousand to eighteen hundred thousand the coming winter of years 1890 and 1891, and further agree to enter on to lot number 22 in 11 range of Berlin, and cut all timber standing on said lot, as small as twelve feet long and six inches at top end, and if not enough on said lot they shall go on either, on to lot number 23 range 11 or lot number 19 in 10th range, cut clean as far as they go enough to make up the amount as described above, and to land all the timber in good and workmanlike manner on the banks and in the Ammonoosuc river in a good and suitable manner for putting in landings in the spring for driving, and all timber to be landed below where Wright lands his timber. And further agree to enter on said lots with good and suitable teams, well manned and equipped to haul the amount of logs named at a reasonable time, to commence logging and log during the season, price three dollars per thousand, and the said E. Hickey promises and agrees to pay the above named price and accept the logs when they are landed and payments to be made as follows, and to pay forty per cent. as fast as the work goes on and the balance when they get done in the spring, and further agrees to furnish money or its equivalent to buy six horses or oxen as said Hutt & Wentworth may elect, said horses or oxen are to remain the property of E. Hickey until paid for by Hutt & Wentworth, said Hutt & Wentworth agree to pay the price paid for the teams at settlement, and we all agree to have a good and competent scaler, scaler to be agreed upon by the parties, scale to be straight and sound board measure.'

"And the plaintiffs aver that the defendant in consideration of the aforesaid contract, promised the plaintiffs that he was law-

fully possessed of said lots, and had good right and lawful authority to cut all the timber growing or being on the same, and to haul it off from said land to the Ammonoosuc river aforesaid, and further promised in consideration of said agreement that the plaintiffs in entering upon said land for the purpose of cutting and hauling logs should have the quiet and undisturbed possession of said lots during the whole logging season of 1890 and 1891, and until said contract could be fully performed by the plaintiffs according to its terms and specifications.

"Yet the defendant, wholly neglecting his said promise, was not lawfully possessed of the said lots, and had not good right and lawful authority to cut the timber growing on the same and haul it to the Ammonoosuc river, and did not maintain the plaintiffs in quiet and undisturbed possession of said lots during said logging season of 1890 and 1891, or until said contract could be fully performed by the plaintiffs. But, on the contrary, Freemont H. Wright and George R. Eaton brought a bill in equity against the defendant and the plaintiffs, and on the 7th day of February, 1891, obtained an order from the supreme court enjoining the plaintiffs from cutting, removing, and hauling the said logs, and from doing any other act or thing in performance of their said contract, whereby the plaintiffs lost great gains and profits, to wit, four thousand dollars, and the camps and roads which had been built and the men who had been hired, and the horses, oxen, sleds, chains and camps and logging tools and utensils which had been bought by the said plaintiffs to enable them properly and successfully to perform their said contract, were of no benefit to the plaintiffs, and the plaintiffs were compelled to expend divers large sums of money in and about the boarding, victualling, and lodging of said men, oxen, and horses, and paying wages to said men, all of which became of no benefit to the plaintiffs, and to their damage, as they say, the sum of five thousand dollars."

At the trial (which was begun before a jury) the defendant requested that the plaintiffs elect upon which count they would proceed, maintaining that the first two were counts in case and the last a count in assumpsit. The court ordered the plaintiffs to elect, and, excepting to the order, they elected to proceed upon the third count. It appeared in evidence that before the written contract set up in the third count was executed there were conversations between the plaintiffs and the defendant relative to a contract for cutting and hauling this timber, and that in the conversations the defendant said he intended to give the plaintiffs a contract upon which they could make one dollar a thousand feet. The defendant objected to this evidence;—it was ruled out, and the plaintiffs excepted.

The plaintiffs offered to show that when the written contract was made there were on the land certain camps, which could be

conveniently used by them in carrying out the contract, and that they, or others like them, were necessary to the successful perform- ance of the same; that the defendant, as a part of the considera- tion for said contract, gave to the plaintiffs free use of all these camps, but when the plaintiffs entered upon the premises they found Wright and Eaton in possession of the same, and were compelled to construct new camps at considerable expense;—and they claimed this failure on the part of the defendant to provide them with camps as one of the causes of damage. To this evi- dence the defendant objected, and, subject to the plaintiffs' excep- tion, it was excluded.

In the course of the trial it appeared that much evidence was to be offered of which the competency was in dispute, and the case was taken from the jury by consent, for the purpose of obtaining the decision of the law term on the rulings made, and on the points hereinafter stated.

The plaintiffs offer to show that subsequent to the written con- tract the defendant promised, as an inducement to the plaintiffs to enter upon the land to perform the contract, to be at the expense of building new camps, and in consideration of said contract the plaintiffs entered upon said land and constructed camps, under an arrangement with Wright and Eaton, who were occupying the old camps, by which Wright and Eaton were to pay one half of the expense and the plaintiffs the other half;—and they claim to recover one half of the expenses of building new camps, which they actually incurred.

The plaintiffs offer to show that when the written contract was executed the defendant was in possession of the land as cotenant with said Wright and Eaton; that he informed the plaintiffs that he had a right to operate the land and to make the contract, and assured them that he would save them harmless from the inter- ference of other parties; that the plaintiffs relied upon his rep- resentations, and in consequence thereof executed the contract, and entered upon the premises on the 8th day of December; that on the 17th day of December they were notified in writing by Wright and Eaton that they were cotenants with the defendant of the land, and that they objected to the cutting of any more logs on said land until legal partition could be made; that they proposed to file a petition for partition against the defendant, and forbade their operating any further upon the land; that in con- sequence of this notice the plaintiffs ceased from their operations until they had time to consult counsel;—and they claim the loss of time and the wages paid their men, together with the expenses of keeping them and their teams, as one of the elements of damage.

The plaintiffs offer to show that, on the 7th day of February following, an injunction at the suit of Wright and Eaton was served upon them restraining them from further operations upon

the premises; that they were obliged to continue in the lumber business on some tract, or they would meet with very large losses, as they had teams purchased and men employed, and that they could not advantageously dispose of their teams or discharge the men at that season of the year; that they entered into a contract with Blanchard & Twitchell to operate on another tract of land, and to cut and haul logs at the rate of $2.80 per thousand; that this contract with Blanchard & Twitchell was the best they could obtain at that season of the year, and that their loss would be less to make it and operate it than to cease business for the season entirely; that the contract with Blanchard & Twitchell was not a paying contract. and that they lost some money in performing it, but less than they would have lost if they had not made it.

The plaintiffs offer to show that the contract which they made with the defendant to operate the land was advantageous, and that they could have made a profit of one dollar on each thousand feet cut and hauled during the winter season, and that they could have cut and hauled 1,800,000 feet, the largest amount allowed in the contract during the season, if they had not been prevented by the injunction; that they had cut and hauled about 700,000 feet at the time the injunction was served;—and they claim to recover the profits which they could have made on the contract with the defendant, if it had been performed as they could have performed it but for the injunction, and also the sum which they lost in consequence of the unprofitable contract which they made with Blanchard & Twitchell.

From the time of the service of the injunction process in favor of Wright and Eaton to the commencement of the plaintiffs' operation under the Blanchard & Twitchell contract twelve days elapsed, during which time the plaintiffs were maintaining their camps on the Hickey land, feeding their teams and boarding their men, while they were looking for a job;—and they claim to recover the necessary expenses of maintaining their teams and men, and wages paid, during this period.

In the performance of the contract relative to furnishing money or its equivalent to buy horses or oxen, the defendant offered to the plaintiffs some oxen which he had purchased, but the plaintiffs refused to accept them as in compliance with the contract, on the ground that the oxen offered were old and worthless. The defendant refused to perform this part of the agreement in any other way, in consequence of which the plaintiffs were obliged to hire money to purchase oxen at considerable additional expense, which they claim as an element of damage.

The defendant objects to all evidence tending to show that he was in possession claiming title to the lands in question, and representing that he was the lawful owner and had good right to make the written contract, and would save the plaintiffs harmless

from any interruption, claiming that to do so would be to vary, enlarge, or modify the written contract between the parties; and to all the evidence about camps, furnishing supplies, or other agreements made at or before the execution of the written contract, on the same ground.

After the questions of law raised by the case are settled, either party may elect a trial by jury.

*Daley & Goss*, for the plaintiffs.

*Drew & Jordan* and *Bingham & Bingham*, for the defendant.

CARPENTER, J.   The first two counts are case for deceit; the third is assumpsit.   The question whether counts for distinct and separate wrongs, for which by law redress must be sought in different forms of proceeding, may be joined in the same action, is not raised.   *Hallock* v. *Powell*, 2 Cai. 216, 217.   The injury complained of in each of the three counts is substantially the same. It is the defendant's want of and failure to procure the title which he represented and contracted that he had in the timber which the plaintiffs agreed to cut and haul, whereby they were prevented from performing their agreement.   For the redress of a single wrong a declaration at law may properly contain counts in different forms of action, and may be joined with a bill in equity. *Rutherford* v. *Whitcher*, 60 N. H. 110; *Metcalf* v. *Gilmore*, 59 N. H. 417.   More than one method of procedure may be necessary to afford a plaintiff a full and adequate remedy.   *Brooks* v. *Howison*, 63 N. H. 382, 389; *Tasker* v. *Lord*, 64 N. H. 279.   A plaintiff may have an election of remedies so inconsistent that he ought to be required to make his election at or before the beginning of the trial, or of such a nature that without prejudice to the defendant they may be pursued together.   *Clough* v. *Hosford*, 6 N. H. 231; *Whitaker* v. *Warren*, 60 N. H. 20; *Clough* v. *Fellows*, 63 N. H. 133, 134; *Merrill* v. *Perkins*, 59 N. H. 343; *Elsher* v. *Hughes*, 60 N. H. 469; *Peaslee* v. *Dudley*, 63 N. H. 220.   Irrespective of the pleadings, convenience may require that one only of several questions be first tried.   *Bemis* v. *Morey*, 62 N. H. 511. Whether all the issues joined can be justly and conveniently tried together is ordinarily a question of fact to be determined at the trial term.   *Owen* v. *Weston*, 63 N. H. 599.   It was not error in law to require the plaintiffs to elect on which count they would proceed.

The third count is founded not on the written contract set forth in it, but on an oral agreement of which that contract is alleged to be the consideration.   It alleges, in substance, that the defendant, in consideration that the plaintiffs at his request had entered into the written contract, promised them that he had the right to cut and take the timber from the lots specified,—that in fact he

neither had nor procured that right, whereby they were prevented from performing the written contract, and were otherwise damnified. The gravamen of the plaintiffs' complaint is, that the defendant by the breach of his oral agreement prevented them from performing their written contract. The execution of a contract in writing may be a good consideration for a verbal agreement relating to the same subject-matter. *Morgan* v. *Griffith*, L. R. 6 Exch. 70; *Angell* v. *Duke*, L. R. 10 Q. B. 174.

It is not advisable to determine in advance whether particular testimony, as, for example, " that at the time when the written contract was executed the defendant informed the plaintiffs that he had a right to operate the land and to make the written contract, and would save them harmless from the interference of other parties," is or is not competent evidence of the agreement declared upon. A decision of this and other similar questions on the meagre facts reported might mislead the parties. They can be determined more satisfactorily in the first instance at the trial of the cause, in view of the circumstances then developed, and the exact language of the witnesses. Such an agreement as that declared upon might be set up for the purpose of evading the rule of law that negotiations of the parties before and at the time of making a written contract are merged in it.

It is apparent from the terms of the written contract that the timber to which it relates was understood by both parties to be the property of the defendant, or at least that he had the right to cut and carry it away. It is a contract for cutting and hauling timber, not for its sale. To enable the plaintiffs to do the work, the right to enter upon the land and cut the timber was essential, and this right the defendant by implication agreed to give them. The plaintiffs might declare on the contract according to its legal effect, alleging the breach to be the defendant's want of and neglect to procure the right to cut. *French* v. *Bent*, 43 N. H. 448; *Smith* v. *Railroad*, 36 N. H. 458, 493–495. The cause of action thus stated is the same as that which they have undertaken to set forth in the third count, and may be supported without encountering objections to which that count, and evidence offered to sustain it, are exposed.

The measure of damages is the net value of the written contract,—the difference between the stipulated price and the cost of doing the work,—together with compensation for any incidental loss that could be reasonably anticipated by the parties as likely to result from the deceit or breach of contract. *Noyes* v. *Blodgett*, 58 N. H. 502; *French* v. *Bent*, 43 N. H. 448, 450; *Chartier* v. *Marshall*, 56 N. H. 478, 480; *Masterton* v. *Brooklyn*, 7 Hill 61; *Wakeman* v. *Wheeler, etc., Mfg. Co.*, 101 N. Y. 205; *Fox* v. *Harding*, 7 Cush. 516, 522; *Philadelphia, etc., Railroad Co.* v. *Howard*, 13 How. 307, 344; *Morey* v. *King*, 49 Vt. 304, 312, 313. If the plaintiffs had done nothing looking toward the performance of

the contract, its net value would have been the extent of their loss. The expense of preliminary work done and necessary to be done before the cutting and hauling could be commenced would be a partial or a total loss according as they cut and hauled a part or none of the timber. The cost of the maintenance of workmen and teams in idleness for such time as was reasonably necessary to enable the plaintiffs to consult counsel upon their being notified to cease cutting, and for a reasonable time after they were compelled to desist, may be a loss for which they are entitled to recover. They can recover for no loss of this character which by ordinary care they could avoid. *Noyes* v. *Blodgett*, 58 N. H. 502; *Rafferty* v. *Drew*, 64 N. H. 616; *Dillon* v. *Anderson*, 43 N. Y. 231, 237. Other questions relating to damages are not considered. At the trial some of them may not arise, and others may be presented in a different shape.

*Case discharged.*

BLODGETT, J., did not sit: the others concurred.