297 So.2d 136 (1974)
Martha PHILLIPS et Vir, Appellant,
v.
Roy HALL et al., Appellees.
No. T-416.
District Court of Appeal of Florida, First District.
June 18, 1974.
Henry M. Searcy and Richard D. Nichols, of Searcy, Brown & Terrell, Jacksonville, for appellants.
C.T. Boyd, Jr., of Boyd, Jenerette, Leemis & Staas, Jacksonville, for appellees.
McCORD, Judge.
This is an appeal from a final judgment of the Circuit Court dismissing a negligence action. Appellant Martha Phillips was injured when a hand powered merchandise cart operated by appellee, Roy Hall, an employee of Publix Super Markets, Inc. (hereinafter referred to as Publix) struck her in one of Publix' stores.
Prior to this suit, appellants recovered a $5,000 judgment against Publix for the same accident which has not been accepted by appellants. The trial court's final judgment held the present suit is barred by the doctrine of res judicata and found the present suit is not controlled by this court's opinion in Gerardi v. Carlisle, Fla.App., 232 So.2d 36. Appellant relies entirely upon Gerardi for reversal.
This case has caused us to look again into the law surrounding the ruling in Gerardi. *137 There this court held that the owner and driver of a motor vehicle were joint tort-feasors because of the dangerous instrumentality doctrine. Basically, the court held that as to an injured third party, the owner of an automobile (a dangerous instrumentality) and the driver to whom he entrusts its operation are joint tort-feasors and may be sued jointly or severally; that the doctrines of res judicata and estoppel by judgment do not operate to bar a plaintiff who had obtained a judgment against one tort-feasor from relitigating all issues in a subsequent suit against a joint tort-feasor. Such is the rule applied to joint tort-feasors, both having jointly committed a tort on a third party. As in Gerardi, the driver of a vehicle who is guilty of negligence which injures a third party is, of course, a tort-feasor. Also, the owner by entrusting a dangerous instrumentality to the driver who operates it in a negligent manner, is, in effect, a party to the driver's negligence and thereby becomes a joint tort-feasor with the driver.
There has been considerable confusion in the law as to the term "joint tort-feasors" as is borne out by the annotations in 31 A.L.R. 194 and 40 A.L.R.3d 1181. The 1923 case, McNamara v. Chapman, 81 N.H. 169, 123 A. 229, 31 A.L.R. 188 (which immediately precedes the foregoing annotation) appears to us to comport with the more logical and better view in a situation where a tort is committed by a servant whose master is neither an active participant therein nor the owner of a dangerous instrumentality through which a tort is committed by a servant to whom the master has entrusted its operation. In the latter instance, under the holding in Gerardi, the owner of the dangerous instrumentality who entrusts it to a third person driver is, in effect, a party to the driver's negligence. While at times the term "joint tort-feasors" has been loosely used in some cases in connection with the doctrine of respondeat superior (as it was in Gerardi), in its true sense a master and servant are not "joint tort-feasors" when the only relationship which the master has to the tort of the servant is that he is his employer. The Supreme Court of New Hampshire in McNamara v. Chapman, supra, in a well-reasoned opinion points this out. We quote from that opinion as follows:
"In the present case the plaintiff asks that such a second trial be given him, and states several grounds therefor. His chief reliance is upon the proposition that the master and servant are joint tort-feasors. It is to be observed at the outset that in reality the master is not a tort-feasor at all. He is not a wrongdoer. If he were, he could neither claim contribution from one jointly liable as he was, nor indemnity from one for whose acts he must answer, whereas in the present situation he could do either. Nashua Iron & Steel Co. v. Worcester & N.R. Co., 62 N.H. 159. But the fact that there is no joint liability is not necessarily determinative of the right to bring the present suit. The solution of the question depends rather upon the nature of the liability imposed upon the master.
As before stated, the master has done no wrong, but he is by law charged with a certain responsibility for the act of his servant. The law identifies the master with the servant for this purpose, and makes the servant's act the master's. It was upon this ground that the plaintiff recovered his judgment against the master. He did not recover for any wrongful act of the master, but for the negligence of the servant imputed to the master.
The master not being morally guilty, his liability should extend no farther than is necessary to give the aggrieved party redress for the wrong done by the servant. Technical or inequitable rules said to be applicable to joint tort-feasors, and invoked in behalf of the present plaintiff, are not applicable to the present situation. *138 Neither should undue hardship and expense be put upon the servant. If he were not permitted to discharge his liability to the plaintiff by the payment of the judgment already recovered against the master for the servant's act, he must be to the expense of defending the present action against him personally; and if he should prevail therein he would not be discharged, but must thereafter recompense the master for his reasonable expenses and what it might be found he ought to pay on account of the earlier suit, provided that in the master's suit against the servant the master were able to abtain a verdict that the servant was a wrongdoer. Hubbard v. Gould, 74 N.H. 25, 28, 64 A. 668. And if in the present suit against the servant a judgment were recovered by the plaintiff and paid, the servant would still be liable for the reasonable expenses of the former suit against the master. The rule here sought to be invoked would impose upon the servant a greater degree of responsibility than has been put upon any other wrongdoer."
* * * * * *
"If the rule that in the case of joint wrongdoers the plaintiff may severally pursue one after another to judgment, refusing to accept tendered payment of the earlier judgments (McDonald v. Nugen, 118 Iowa, 512, 92 N.W. 675, 96 Am.St.Rep. 407; Blann v. Crocheron, 20 Ala. 320), is the law of this state, it ought not be extended. It should not be applied to cases not clearly falling within its scope, nor when its application will impose an elsewhere unheard of liability. Cases where there is some personal fault of the master of course stand differently, and the injured party may recover of him on the independent ground of such wrong, while still seeking to hold the servant for his act for which no claim is made against the master. But where, as here, the doctrine of identity has been invoked as the foundation for a recovery, and the claimed identity has been established, there plainly ought to be an end of any future proceedings based upon a different and inconsistent situation.
The true foundation for the nonliability of the present defendant is not found in the doctrine of estoppel by judgment, nor in that of satisfaction obtained by the plaintiff from some other party. The plaintiff is debarred from maintaining the present suit because he had and has exercised an election. There was a single wrongful act, and it was the plaintiff's privilege to treat it as that of the actor or as that of the master. It is not at all like the relation of principal and surety, where by agreement one adds to the original and single liability of the principal. It is a case of substitution and not of addition. The master is charged, not because he has agreed to be a surety for the servant's act, but because the law says the act may be treated as that of the master."
* * * * * *
"The plaintiff in the suit against the master must establish a relation of the master to him. He cannot do this by showing the master's presence, for he was absent; nor can it be proved by authority conferred, for none was given. It can only be shown by resorting to the legal fiction that the act of the servant was that of the master.
The plaintiff had his election to treat the master and servant as one and recover from the master, or to disregard their relation and recover from the servant. He could treat the servant's act as that of the master, but not as that of both master and servant. Such situations are not unknown in other phases of the law relating to acts done in a representative capacity. If an agent acts for an undisclosed principal, the other party to the transaction may, upon discovery of the facts, proceed against either; but, having elected to proceed against one, he cannot thereafter pursue the other."

*139 * * * * * *
"The fact that the master has been guilty of no wrong has not been kept sufficiently in mind. Because he is charged with liability, it has therefore been broadly assumed that he was guilty of a tort in a personal sense. This is contrary to the fact. In the case of joint tort-feasors, although there is but a single damage done, there are several wrongs. The act inflicting injury may be single; but back of that, and essential to liability, lies some wrong done by each tort-feasor contributing in some way to the wrong complained of. Carpenter v. W.H. McElwain Co., 78 N.H. 118, 121, 97 A. 560. There is nothing in the present situation in any way fairly comparable to that of joint wrongdoers."
* * * * * *
"In holding the plaintiff to the consequences of his election, there is no idea of compelling him to act without knowledge or to take chances. His right to choose remains open as long as there is just cause that it should be, but no longer. Hutt v. Hickey, supra [67 N.H. 411, 29 A. 456.] It should be preserved until he can be fully informed as to all the facts. This may involve a retention of that right until a trial of a suit against the master settles whether the master can be identified with the servant for the purposes of the claim presented. It may possibly be extended so as to permit the plaintiff to ascertain whether the first judgment against one of them is collectable."
* * * * * *
"In the present case it appears, or is admitted, that the only wrong complained of is the negligent act of the servant at a time when the master was not present, that the master was sued therefor and a judgment was entered against him, and that payment of the judgment has been tendered. Upon these facts, the present suit against the servant for the same wrong cannot be maintained."
We agree with the trial judge below that the case sub judice is not controlled by this court's previous opinion in Gerardi. Gerardi should not, in our view, be extended to encompass the situation here presented. Appellant having elected to sue the master, Publix, and having obtained a collectable judgment against it, she cannot now refuse to accept satisfaction from the master and sue the servant.
Affirmed.
SPECTOR, C.J., concurs, and BOYER, J., specially concurring.
BOYER, Judge (concurring specially).
I concur in the rationale and holding in the majority opinion. I also concur in the manner in which our prior decision in Gerardi v. Carlisle, Fla.App. (1st) 1969, 232 So.2d 36, is distinguished on the basis of the doctrine of dangerous instumentalities as applied to motor vehicles. Further, I concede that in keeping with the doctrine of stare decisis this Court had no alternative but to hold as it did in Gerardi. However, in my opinion the rationale of Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255, upon which Gerardi is based, is in conflict with the rationale in McNamara v. Chapman, 81 N.H. 161, 123 A. 229, 31 A.L.R. 188 (1923), from which we, in the majority opinion above, quote at length.
In order to be joint tort-feasors in fact, each tort-feasor must have committed some wrong which results in an injury or damage to another. Although there is but a single damage done, there are several wrongs. True joint tort-feasors may not claim contribution nor indemnity from the other. However, it is a well recognized principle that the owner of an automobile may recover from the operator thereof any damages which the owner suffers as a result of the operator's negligence. A fortiori, it appears to me, that in the true sense of the term the owner of a vehicle *140 and the negligent operator thereof are not in fact joint tort-feasors. Such a position does not, of course, affect our decision in the case sub judice but it does do violence to the basis of this Court's opinion in Gerardi.
As above recognized, the decision in Gerardi was inevitable in the light of the holding in Southern Cotton Oil Co. v. Anderson, supra, and the other cases therein cited. However, I most respectfully suggest that the Supreme Court of Florida, in keeping with its approach in Hoffman v. Jones, Sup.Ct.Fla. 1973, 280 So.2d 431, might re-examine, in the light of present day facts, the reasonableness of the application of the dangerous instrumentality doctrine to motor vehicles. The mere ownership of a motor vehicle is not wrongful. Neither is it per se wrong to permit one's vehicle to be operated by another. Southern Cotton Oil Co. v. Anderson, supra, was decided in 1920. At that time there were about as many horses on the roads as automobiles. Automobiles were noisy and undependable, subject to backfiring, dropping tie rods and other malfunctions. The noise emanating from their exhausts had a frightening effect upon pedestrians and horses alike. It may well be that in light of those circumstances they were logically classified as dangerous instrumentalities. Today, however, although automobiles are much maligned it is seldom indeed that the vehicle itself results in injury: It is the driver who is the dangerous instrumentality, not the vehicle. Statistics reveal that there are almost as many accidents in the bathtub, and more in homes, as in automobiles. The application of the dangerous instrumentality doctrine to motor vehicles has resulted in numerous aberrations in the law. Distinguishing the facts sub judice from those in Gerardi might well be considered one of them.
As above stated, I am fully in accord with our opinion sub judice. I concur, after the fact, in Gerardi only because of the doctrine of stare decisis.