232 So.2d 36 (1969)
Rudolph GERARDI and Loretta Gerardi, His Wife, Appellants,
v.
Elizabeth CARLISLE, Appellee.
No. L-500.
District Court of Appeal of Florida. First District.
December 30, 1969.
Rehearing Denied March 4, 1970.
*37 Blalock, Holbrook, Lewis, Paul & Bennett, Jacksonville, for appellants.
Howell, Kirby, Montgomery & D'Aiuto, Jacksonville, for appellee.
WIGGINTON, Judge.
Plaintiffs seek appellate review of a summary final judgment rendered in favor of defendant. There is no contention that the pleadings, exhibits and other evidence in the file create any disputed issues of fact. It is agreed that in rendering the judgment appealed the trial court found that defendant was entitled to judgment as a matter of law. Plaintiffs challenge the correctness of this adjudication.
Plaintiff wife suffered personal injuries and other damages as a result of a collision between a motor vehicle in which she was riding and a vehicle owned by one Bobby Polk and operated with his knowledge and consent by Elizabeth Carlisle. As a result plaintiffs instituted an action against the owner of the vehicle, Bobby Polk, alleging damages suffered by them as a result of the negligent operation of Polk's vehicle by Carlisle. Final judgment in that action was rendered in favor of plaintiffs and against Polk who paid into the registry of the court the amount necessary to satisfy the judgment in full, together with all accrued interest and costs, pursuant to the applicable provisions of the statute.[1] Plaintiffs appealed on the ground *38 that the amount of the verdict was insufficient, but the judgment was affirmed by this court.[2] Plaintiffs have refused to accept the registry deposit, and have taken no action toward execution of that judgment.
While the first case was pending on appeal in this court plaintiffs instituted the case sub judice in which they name as the sole defendant the driver, Elizabeth Carlisle. The cause of action alleged in the complaint is the same cause of action sued upon in their case against the owner of the vehicle, Bobby Polk, the only difference being that defendant is sued as operator of the offending vehicle whereas in the former suit the defendant, Bobby Polk, was sued as the owner of the vehicle vicariously liable for the damages resulting from its negligent operation by Carlisle. To the complaint defendant filed a defense of general denial, and in addition interposed a defense of res judicata and estoppel by judgment. By this latter defense the defendant alleges the recovery of a judgment by plaintiffs against Polk and the satisfaction of that judgment by payment of the amount thereof into the court registry. The answer further alleges that the issues in the suit against Polk are identical with the issues raised by the pleadings in this case, and the cause of action is based upon the identical facts alleged and proved in the first case against Polk. Based upon these allegations defendant alleges that plaintiffs are estopped from claiming damages in this case by reason of the judgment rendered in their favor in the action brought by them against the owner Polk which has been satisfied in full, or, in the alternative, are barred from recovery under the doctrine of res judicata. A copy of the complaint, answer and final judgment in the Polk suit are attached to the answer as exhibits.
Based upon the pleadings, admissions of fact, and the exhibits attached to defendant's answer, the court rendered summary final judgment in defendant's favor. It is that judgment which we are called upon to review on this appeal.
It is appellants' position that since Bobby Polk, the owner of the offending vehicle, and defendant Elizabeth Carlisle, operator of that vehicle, are joint tort-feasors, plaintiffs possess the right to sue them in separate actions, and if judgment is secured against each, then plaintiffs may elect which of the two judgments they will seek to enforce by execution. Appellee does not question the correctness of this postulate.[3]
Appellants recognize the well established principle of law that the satisfaction by a plaintiff of a judgment secured against one joint tort-feasor will discharge all other joint tort-feasors from liability and immunize them against subsequent claims by plaintiff arising out the same cause of action. Appellants contend, however, that their judgment against Bobby Polk has not been voluntarily satisfied by them within the meaning and intent of the foregoing rule because they have refused to accept the amount deposited by Polk in the court registry in payment of the judgment. Appellants urge that their right to pursue in separate and successive actions each of the joint tort-feasors, the owner and the operator of the offending vehicle, may not be taken from them merely by the judgment *39 debtor, Polk, depositing the amount of the judgment secured against him into the court registry pursuant to the provisions of the statute.[4] Appellants recognize that the statute in question characterizes such a deposit as a satisfaction in full of the judgment. They submit, however, that the weight of authority in this country holds that a deposit into the court registry by a joint tort-feasor of the amount of a judgment secured against him under statutes similar to the one in effect in this state does not have the legal effect of releasing all other joint tort-feasors from liability or of constituting a satisfaction of the judgment to the extent of precluding the injured plaintiff from bringing a separate and successive action against another or other joint tort-feasors on the same cause of action.
Appellants therefore present as the sole point on appeal the question of whether the payment of a judgment by a defendant joint tort-feasor into the registry of the court pursuant to F.S. § 55.141, F.S.A., without acceptance of the deposit by the plaintiff constitutes such a satisfaction of the judgment as to preclude a subsequent suit by the injured party against another joint tort-feasor. A careful analysis of the statute persuades us to the view that it was enacted primarily for the benefit of judgment debtors, and not judgment creditors. In fact the statute operates to penalize the judgment creditor who accepts the payment so deposited in the court registry because when the amount is withdrawn, the total amount of the judgment is diminished by the amount of the fee charged by the clerk for passing the money into and out of his registry fund. The benefits conferred upon the judgment debtor under the statute are substantial. By making such a deposit he precludes a levy from being made against his property, arrests the further accrual of interest on the judgment, and at the same time releases any property he may own from the lien of the judgment. The statute furthermore permits the judgment debtor to discharge his obligation by availing himself of the provisions of the statute under circumstances where the judgment creditor is unknown, cannot be reached, or his place of residence cannot be ascertained. We do not conceive it to have been the legislative intent by the enactment of this statute to withdraw from an injured party the right to bring separate and successive actions against two or more joint tort-feasors by requiring such party to involuntarily accept as satisfaction in full the amount of a judgment secured against one tort-feasor in the first action instituted, if that defendant deposits in the court registry the amount of the judgment rendered against him. The great weight of authority in this country is to the contrary, and stands for the proposition that a deposit under a statute similar to the one involved in this case amounts to a satisfaction of the judgment only insofar as it pertains to the judgment debtor making the deposit, but does not constitute such a satisfaction as to preclude the injured plaintiff from pursuing his remedies against remaining tort-feasors in separate and successive actions against them.[5]
Prosser, in his treatise on the Law of Torts, says:
"The first [English rule] has generally been repudiated in the United States, and it is now held everywhere that an unsatisfied judgment against one tort-feasor does not bar an action against another. The plaintiff may bring separate suits, pursue each to judgment, and elect *40 to enforce either or both. It has even been held that he may refuse tender of payment of the first judgment, and still proceed to speculate upon the possibility of a larger recovery by means of a second."[6]
In the Restatement of the Law of Torts, the general rule is stated to be:
"The issuance of execution against one of the tort-feasors does not destroy the right to proceed against the others. Likewise an unaccepted tender of payment or a payment into court of the amount of the judgment by a judgment debtor without the consent of the judgment creditor does not terminate the claim against other persons liable for the same harm."[7]
The foregoing statements of principle have been adopted by the author of Corpus Juris Secundum as the general rule in effect in this country:
"Payment of a judgment into court, without acceptance thereof by plaintiff in satisfaction of his recovery, will not bar an action against a joint tort-feasor. * * *"[8]
Although appellee does not agree that the point on appeal presented and argued by appellants is necessarily the controlling question to be decided, she takes the position that if such point is valid, then the question has been resolved against appellants by the decision of the Fourth District Court of Appeal in the case of Weaver v. Stone.[9] The Weaver case is factually identical in all material respects with the case sub judice. From the opinion we are unable to determine whether the court treated the defendant owner of the vehicle in the first case and the defendant operator in the second case as joint tort-feasors, or whether the court based its decision on some other and different theory of law. The court did hold, however, that the deposit in the court registry by the owner of the offending vehicle of the amount of the judgment rendered against him in a prior suit operated to satisfy the judgment and precluded the injured plaintiffs from bringing the second suit on the same cause of action against the operator. To the extent of any similarity between the factual and legal issues raised and decided in the Weaver case and those raised and presented for our decision in this case, we must respectfully decline to follow the rule of law pronounced in Weaver for the reasons and upon the authorities hereinabove cited and discussed.
Secondarily, appellee takes the position that the rule of law which permits an injured party to bring and pursue to judgment separate and successive actions against joint tort-feasors does not apply in the case sub judice because under the facts of this case the owner and operator of the vehicle which injured plaintiffs do not fall within the legal category of joint tort-feasors. With this contention we are unable to agree.
In the landmark case of Southern Cotton Oil Co. v. Anderson[10] the dangerous instrumentality doctrine was first extended to include motor vehicles and held that owners would be held accountable for any damages suffered by a third person as a result of the negligent operation of the vehicle while being driven with the owner's knowledge or consent. Although the owner and his operator are in privity with each other under the doctrine of respondeat superior, *41 they are not in pari delicto.[11] The operator is the tort-feasor guilty of the negligent act which proximately causes the damages suffered by a plaintiff, while the owner is vicariously liable under the doctrine of imputed negligence whereby the operator becomes his agent for whose negligent act the owner is liable. In the Southern Cotton Oil Co. case, the court quoted with approval from Pollock on Torts, 506, as follows:
"`The law takes notice that certain things are a source of extraordinary risk, and a man who exposes his neighbor to such a risk is held, although his act is not of itself wrongful, to insure his neighbor against any consequent harm not due to some cause beyond human foresight. * * *'"
The court, in reaching its decision, said:
"`* * * The principles of the common law do not permit the owner of an instrumentality that is not dangerous per se, but is peculiarly dangerous in its operation, to authorize another to use such instrumentality on the public highways without imposing upon such owner liability for negligent use. The liability grows out of the obligation of the owner to have the vehicle, that is not inherently dangerous per se, but peculiarly dangerous in its use, properly operated when it is by his authority on the public highway. In view of the dangers incident to the operation of automobiles, and of the duties and obligations of the owners of motor vehicles under the statutes of the state, it could not be said that on the facts of this case no question was made for the jury to decide.' Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975, L.R.A. 1917E, 715."
* * * * * *
"In intrusting the servant with this highly dangerous agency, the master put it in the servant's power to mismanage it, and as long as it was in his custody or control the master was liable for any injury which might be committed through his negligence. * * *"
The foregoing pronouncement establishes the principle that the negligence of a motor vehicle operator is imputed to the owner under the doctrine of respondeat superior, and the tortious act of the agent operator becomes the tortious act of the principal owner thereby vicariously subjecting the latter to liability for the acts of the former. Under such circumstances each is a joint tort-feasor and is jointly and severally liable to the injured person.
Appellee urges upon us the proposition that the owner of a motor vehicle and one who negligently operates it with the owner's consent do not occupy toward each other the legal relationship of joint tort-feasors. This position is premised upon the well recognized principle that the owner may recover from the operator of his motor vehicle any damages which the owner suffers as a result of the operator's negligence under the doctrine of principal and agent.[12] Appellee reasons that such recovery would not be permissible if the owner and operator were joint tort-feasors because the law of this state precludes a tort-feasor from seeking contribution from a joint tort-feasor.[13] Such reasoning is unsound and must be rejected.
The joint tort-feasor relationship of parties arising under the principle of imputed negligence was established by the Supreme Court in Colle v. Atlantic Coast Line R. Co.[14] wherein the company and its engineer were sued as joint defendants for *42 damages arising from the negligent operation of defendant's locomotive which caused plaintiff's property to be set afire and destroyed. After holding that the company was liable for the negligent acts of its employee under the doctrine of respondeat superior, the court said:
"* * * The defendants were charged as joint tort-feasors and were severally and jointly liable. The plaintiffs could take a judgment against one of the defendants or both. * * *"
In May v. Palm Beach Chemical Co.[15] the Supreme Court said:
"* * * A study of the origin and application of the doctrine of vicarious liability on the part of an automobile owner shows clearly that whatever may be the limitations of its scope of application, liability is bottomed squarely upon the doctrine of respondeat superior arising from a principal and agent relationship implied in law. * * *"
In Hale v. Adams[16] this court considered the difference in legal relationship which exists between a plaintiff who is injured as a result of the negligent operation of a motor vehicle and the owner and operator of the offending vehicle on the one hand, and the owner of the vehicle and the person operating it with the owner's consent on the other hand. In that case this court said:
"The rule is also established that the owner of an automobile is liable to a third party for damages resulting from the negligence of the automobile's driver, who is operating with the owner's knowledge and consent, for the reason that the driver's negligence is imputed to the owner. At first blush it might seem logical to conclude from this rule that the owner, as the principal, could not sue the driver, his agent, for negligence because, if the driver's negligence is imputed to the owner, any negligence proven against the driver would be immediately imputed against the owner who would thus be barred from recovery. Such a conclusion is not sound, however, for the simple reason that the doctrine of imputed negligence has no application in an action by a principal against his agent. Also, a defendant should not be permitted to defeat an action on the ground that he was guilty of wrongdoing.
"Council on this appeal have cited to us no Florida case, and our independent research has revealed none, in which the question was discussed or determined whether the owner of an automobile can bring an action for negligence against the driver operating it with his knowledge and consent. We join with those jurisdictions which hold that imputation of the driver's negligence to the owner has no application in a suit by the owner against the driver, even though such imputation would be imposed on the owner in a suit brought against him by a third party. * * *"
From the foregoing it is clear that in a suit to recover damages for the negligent operation of a motor vehicle, the owner and the negligent operator bear the relationship of joint tort-feasors to the injured plaintiff under the principle of imputed negligence. But in a suit by the owner against the operator of a vehicle to recover damages suffered by the owner as a result of the operator's negligence, the principle of imputed negligence is not applicable and the parties bear to each other the relationship of principal and agent under the doctrine of respondeat superior. In such an action the owner is not precluded from recovery merely because the parties occupied the position of joint tort-feasors in their relationship to the person injured as a result of the operator's negligence.
Appellee takes the alternative position that despite the legal effect of the statute permitting a judgment debtor to deposit the *43 amount awarded against him in the court registry, the summary judgment appealed should nevertheless be affirmed on the principles of law relating to estoppel by judgment and res judicata. Such position is predicated upon the proposition that although the defendant operator in the case sub judice was not named as a defendant in the first suit against the owner of the vehicle, she was nevertheless in privity with the owner and is therefore bound by the judgment rendered in the earlier case against him. Appellee submits as authority for this position the body of case law existing in our state summarized by the author of Florida Jurisprudence as follows:
"As to the persons in whose favor or against whom an adjudication will be held to be conclusive, it is well settled that a judgment or decree binds only the parties and those in privity with them. In a strict sense, parties to a judgment or decree are only those who are named as such in the record, who are properly served, or who enter an appearance. However, the term `parties' as employed in the application of the doctrine of res judicata may sometimes be extended beyond the parties to the record, such as those who participate in the action or who were virtually represented therein."[17]
Although admittedly the owner of a motor vehicle and the person operating it with his consent are in privity with each other under the doctrine of respondeat superior, it is not that character of privity in which a judgment in favor of the plaintiff in a suit against one tort-feasor will be conclusively binding on the plaintiff as to all issues in a subsequent suit against a joint tort-feasor. This conclusion is supported by the rules of law embodied in that section of Florida Jurisprudence dealing with persons who are included as privies in cases involving the doctrines of res judicata and estoppel, which is as follows:
"There is no single, conclusive definition of a privy as applying to cases involving the doctrine of res judicata. The ground on which persons standing in the relation of privies to a litigating party are bound by the proceedings is that they are identified with the litigant in interest. Accordingly, those claiming under the parties in the former action are in privity. The term `privity' denotes mutual or successive relationship to the same rights or property. Some cases refer to `privity of estate.' Thus, bound by a prior adjudication is a successor in title such as a subsequent purchaser or an assignee. But, where a claimant does not take title to the property conveyed from either of the parties to a former proceeding, he is not in privity with those parties.
"Privity may also result from representation, from contract, as on a surety's bond, or from law. It is not established by the mere fact that a person seeks damages arising from the same occurrence."[18]
It seems clear to us that the doctrines of res judicata and estoppel by judgment do not operate to bar a plaintiff who has recovered a judgment against one tort-feasor from relitigating all issues in a subsequent suit against a joint tort-feasor. Those are the facts present in the case sub judice and render the theory espoused by appellee inapplicable.
For the foregoing reasons the judgment appealed is reversed and the cause remanded for further proceedings consistent with the view expressed herein.
JOHNSON, C.J., and SPECTOR, J., concur.
NOTES
[1] F.S. § 55.141, F.S.A.

"(1) All judgments and decrees for the payment of money rendered in the courts of this state and which have become final, may be satisfied at any time prior to the actual levy of execution issued thereon by payment of the full amount of such judgment or decree, with interest thereon, plus the costs of the issuance, if any, of execution thereon into the registry of the court where rendered.
"(2) Upon such payment, the clerk, or the judge if there be no clerk, shall issue his receipt therefor and shall enter notation thereof upon the margin of the record of such judgment or decree and shall formally notify the owner of record of such judgment or decree, if such person and his address are known to the clerk or judge receiving such payment, and, upon request therefor, shall pay over to the person entitled, or to his order, the full amount of the payment so received, less his fees for issuing execution on such judgment or decree, if any has been issued, and less his fees for receiving into and paying out of the registry of the court such payment, together with the fees of the clerk for receiving into and paying such money out of the registry of the court.
"(3) Full payment of judgments and decrees as in the preceding subsections of this section provided shall constitute full payment and satisfaction thereof and any lien created by such judgment or decree shall thereupon be satisfied and discharged."
[2] Gerardi v. Polk (Fla.App. 1969), 220 So.2d 387.
[3] Power v. Baker, (C.C.Minn. 1886), 27 F. 396.
[4] F.S. § 55.141, F.S.A.
[5] Bradford v. Carson (1931), 223 Ala. 594, 137 So. 426; McDonald v. Nugen (1902), 118 Iowa 512, 92 N.W. 675; Skelly Oil Co. v. Jordan (1939), 186 Okla. 130, 96 P.2d 524; Randall v. Fenton Storage Co. (1936), 121 Pa.Super. 62, 182 A. 767; Bergen v. Lit Bros. (1946), 354 Pa. 535, 47 A.2d 671; Hime v. Sullivan (1949), 188 Tenn. 605, 221 S.W.2d 893; Fitzgerald v. Campbell (1921), 131 Va. 486, 109 S.E. 308, 27 A.L.R. 799; Morse v. Modern Woodmen of America (1917), 166 Wis. 194, 164 N.W. 829; 27 A.L.R. 810.
[6] Prosser, Law of Torts, § 45, Judgment and Satisfaction (3rd Ed., 1964).
[7] Restatement of Torts, § 886, Comment c, p. 465 (1939).
[8] 50 C.J.S. Judgments § 761, p. 288.
[9] Weaver v. Stone (Fla.App. 1968), 212 So.2d 80.
[10] Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 631-632, 636, 16 A.L.R. 255.
[11] Hutchins v. Frank E. Campbell, Inc. (Fla.App. 1960), 123 So.2d 273; May v. Palm Beach Chemical Co. (Fla. 1955), 77 So.2d 468.
[12] 1 Fla.Jur. 664, Agency, § 58.
[13] Westinghouse Electric Corp. v. J.C. Penney Co. (Fla.App. 1964), 166 So.2d 211; Kellenberger v. Widener (Fla.App. 1964), 159 So.2d 267.
[14] Colle v. Atlantic Coast Line R. Co. (1943), 153 Fla. 258, 14 So.2d 422, 424.
[15] May v. Palm Beach Chemical Co., supra note 11, 77 So.2d at 472.
[16] Hale v. Adams, (Fla.App. 1960), 117 So.2d 524, 527.
[17] 19 Fla.Jur. 205-208, Judgments and Decrees, § 154.
[18] 19 Fla.Jur. 211-215, Judgments and Decrees, § 156.