242 So.2d 485 (1970)
Kenneth W. GORDON, Appellant,
v.
The PHOENIX INSURANCE COMPANY, Appellee.
No. N-430.
District Court of Appeal of Florida, First District.
December 31, 1970.
*486 William R. Davenport, Pensacola, for appellant.
William H. Clark, Pensacola, for appellee.
WIGGINTON, Judge.
Plaintiff in the trial court has appealed an adverse declaratory judgment which construes the uninsured motorist provision of a standard automobile liability insurance policy issued to plaintiff by defendant, Phoenix Insurance Company. Appellant contends that the trial court erred in holding that the uninsured motorist provision of the policy held by him fails to provide coverage for the damages he suffered under the facts and circumstances of this case.
The material facts pertinent to the issue presented for decision have been agreed upon and are not in dispute. Appellee Phoenix issued to appellant Gordon its automobile liability insurance policy containing the standard uninsured vehicle provision as required by our existing statutes.[1] While this policy was in full force and effect, Gordon was injured in a vehicular collision resulting from the negligent operation of an automobile owned by James Britan but operated by Sandra Felton Poston. At the time of the collision the owner, Britan, held no automobile liability insurance policy covering his vehicle, but the *487 operator, Poston, was the insured in a policy of automobile liability insurance issued by Commercial Union Insurance Company of New York which contained the limits of coverage required by law.[2] Appellant sued Poston and her insurance carrier for the damages suffered by him and recovered a judgment in excess of the policy limits. Poston's insurance carrier paid to appellant the limits of its policy and received a satisfaction of the judgment recovered in the suit. After concluding his action against Poston, appellant then brought this action against Phoenix seeking to recover the balance of the judgment previously recovered against Poston, claiming entitlement thereto under the uninsured vehicle coverage of his policy with Phoenix. Appellant's sole contention is that since Britan, the owner of the offending vehicle, carried no liability insurance on his automobile at the time of the collision, the uninsured vehicle coverage of the insurance policy held by appellant is applicable and he is entitled to reimbursement from Phoenix under the terms thereof.
The statute which requires automobile liability insurance carriers to include in their policies a provision for uninsured vehicle coverage is as follows:
"No automobile liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than limits described in § 324.021(7), under provisions filed with and approved by the department, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage; provided further that, unless the named insured requests such coverage in writing, the coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer."[3]
The foregoing statute requires all automobile liability insurance policies to contain a provision sufficient to indemnify the persons insured under the policy for such damages as they are legally entitled to recover from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. A literal construction of the statute would seem to indicate that if either the owner or the operator of the offending vehicle who is legally responsible for the damages suffered by the insured is covered by liability insurance, then the uninsured vehicle coverage provided by the policy is inapplicable. The terms "owners" and "operators" contained in the statute are employed alternatively because under the dangerous instrumentality doctrine prevailing in Florida, both the owners and operators of motor vehicles are jointly and severally liable for the damages resulting from the negligent use or operation thereof. The public policy underlying uninsured vehicle coverage in automobile liability insurance policies was enunciated by this court as follows:
"The cited statute requiring that protection against uninsured motorist be provided in all automobile liability insurance policies issued in this state, unless written notice declining such coverage be given by the insured, established the public policy of this state to be that every insured, within the definition of that term as defined in the policy, is entitled to recover under the policy for the damages he or she would have been able to *488 recover against the offending motorist if that motorist had maintained a policy of liability insurance. * * *"[4]
The uninsured vehicle provision contained in the insurance policy sued upon is as follows:
"* * * To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called `bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; * * *."
The term "uninsured automobile" contained in the above-quoted provision of the policy is defined therein as:
"(a) an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, * * *."
From the foregoing provisions it appears eminently clear that the uninsured vehicle coverage provided by the policy applies solely to vehicles with respect to the ownership, maintenance or use of which there is no liability insurance policy applicable to any person legally responsible for the use of the vehicle. In the case sub judice the facts are undisputed that Poston, the driver of the offending vehicle, was covered by a policy of liability insurance and under the law of this state was legally responsible for the use and operation of the vehicle at the time it caused appellant's injuries. Under these circumstances Britan's vehicle driven by Poston was not an uninsured automobile within the terms and definitions of the policy even though the owner, Britan, carried no liability insurance on the vehicle.
Our research has failed to disclose any decision in Florida passing upon the precise question presented by this appeal. The issue has been litigated, however, in other jurisdictions whose courts have reached the same conclusion as that expressed herein.
In the case of United States Fidelity & Guaranty Company v. Byrum[5] an uninsured automobile negligently operated by Byrum collided with a vehicle owned and operated by Jernigan, as a consequence of which Jernigan and his family were severely injured. At the time of the collision Byrum was acting in the course of his employment with the Perry Company. Jernigan sued Byrum and Perry and recovered a judgment which was paid by Perry's liability insurance carrier, United States Fidelity & Guaranty Company. The question then arose as to whether Perry's insurance carrier who paid the judgment against its insured was entitled to contribution or indemnification from Jernigan's insurance carrier under an uninsured vehicular provision of Jernigan's automobile insurance policy. Such claim was made on the theory that the Byrum car was uninsured and, therefore, Jernigan could have brought suit against his own insurance carrier under the uninsured vehicular provision of his policy, to which right United States Fidelity & Guaranty Company claimed to be subrogated and entitled to a pro rata contribution because of the judgment it paid on Byrum's behalf. In rejecting this contention, the Supreme Court of Appeals of Virginia said:
"It is true that no policy of bodily injury liability insurance specifically covering the Byrum vehicle was in effect, but this fact standing alone does not necessarily lead to the conclusion that the *489 vehicle was an `uninsured motor vehicle' within the meaning of the statute.
"As has been said, at the time of the collision Byrum was operating his mother's vehicle within the scope of his employment with Perry Company, and under U.S.F. & G.'s policy Perry Company was insured against liability arising out of Byrum's negligent acts committed while operating the vehicle. When Robert Jernigan's administrator secured a verdict and judgment against Byrum and Perry Company, they both became legally liable for the accident and were obligated to pay the judgment. As a consequence, U.S.F. & G. Perry Company's insurer, paid the judgment in full and settled the personal injury claims. The policy, in effect, extended to the vehicle operated by Byrum on this particular occasion, and it is readily apparent that, as a practical matter, the Byrum automobile at the time of the accident was a motor vehicle as to which there was liability insurance as required by § 46.1-1(8). We therefore hold that the Byrum car was an insured, rather than an uninsured motor vehicle within the meaning of the uninsured motorist law and that the uninsured motorist endorsement contained in Celina's liability policy did not become operative."
Thus we see that the Supreme Court of Appeals of Virginia construed the uninsured vehicle provision of the Jernigan policy to mean that even though the offending vehicle owned by Byrum was uninsured, nevertheless Byrum's employer was legally liable for his negligent operation of the vehicle while in the course of his employment, as a result of which the offending vehicle was not "uninsured" within the meaning and intent of the uninsured vehicle coverage of Jernigan's policy.
In Macaluso v. Watson[6] an injured motorist sought to recover from his own automobile liability insurance carrier under the uninsured vehicle provision of his policy the damages he suffered as a result of the negligent operation of another vehicle owned by one Brown and operated at the time of the collision by one Watson. Although the plaintiff was successful in proving that Brown, the defendant owner of the offending vehicle, carried no liability insurance at the time of the collision, he failed to prove that Watson, the operator of the offending vehicle, was uninsured. Because of this the trial court dismissed the action against plaintiff's insurance carrier upon the holding that in order to recover under the uninsured vehicle provision of the policy, plaintiff was required to prove that neither the owner nor the operator of the offending vehicle was covered by liability insurance, and his failure to carry this burden of proof required dismissal of the action. The trial court's dismissal was affirmed by the court of appeals. In doing so, the court said:
"However, the pivotal and important question is whether the insurer or the insured has the burden of proving, under the `uninsured motorist' clause of an automobile policy, that the other motorist in the accident was uninsured. Other jurisdictions hold that the insured, seeking to recover under the uninsured motorist clause of his liability policy, has the burden of proving the offending motorist was uninsured. * * *"
The point in issue on which our decision turns was considered by the author of American Law Reports in his discussion of uninsured motorist provisions of automobile liability insurance policies from which he states the following conclusion:
"It should be readily apparent that where neither the owner nor the person operating an automobile at the time of an accident is covered by public liability insurance, the automobile is `uninsured' for purposes of an uninsured motorist indorsement, and cases recognizing this fact have not been collected.

*490 "On the other hand, so long as there is insurance `applicable to the accident,' the vehicle causing the injury is `insured' for purposes of uninsured motorist coverage, no matter for whom the insurance was purchased."[7]
There is yet another cogent and compelling reason why appellant is precluded from recovery in this case. Both Poston, the driver of the offending vehicle which caused appellant's damages, and Britan, the owner of the vehicle operated by Poston, are held as a matter of law to be joint tort-feasors under the doctrine of respondeat superior prevailing in this state. It is the settled law of this jurisdiction that if an injured person sues and recovers a judgment against one of several joint tort-feasors, accepts payment of that judgment and executes a satisfaction thereof, he releases as a matter of law all other joint tort-feasors from liability for the cause of action sued upon and is estopped from thereafter seeking recovery from any other joint tort-feasors who were otherwise legally liable for the damages suffered. In recognition of that principle, this court said in Gerardi v. Carlisle:
"It is appellants' position that since Bobby Polk, the owner of the offending vehicle, and defendant Elizabeth Carlisle, operator of that vehicle, are joint tort-feasors, plaintiffs possess the right to sue them in separate actions, and if judgment is secured against each, then plaintiffs may elect which of the two judgments they will seek to enforce by execution. Appellee does not question the correctness of this postulate.
"Appellants recognize the well established principle of law that the satisfaction by a plaintiff of a judgment secured against one joint tort-feasor will discharge all other joint tort-feasors from liability and immunize them against subsequent claims by plaintiff arising out of the same cause of action. * * *"[8]
In the case sub judice appellant sued Poston, one of the two joint tort-feasors involved in this controversy, recovered judgment against her, accepted payment of that judgment and executed a satisfaction thereof. By doing so, appellant released Britan, the owner and other joint tort-feasor, from any liability on account of the cause of action arising out of the negligent operation of Britan's vehicle. This being so, appellant was no longer legally entitled to recover as damages any amount against Britan, the owner of the automobile. It would therefore follow that whether Britan was insured or not was wholly irrelevant. If appellant is precluded from asserting any legal liability against Britan, then the uninsured motorist coverage of his policy becomes inapplicable because by the clear terms of the statute such provision is enforceable only under circumstances where the insured is legally entitled to recover from the owner of the offending vehicle.
For the foregoing reasons we conclude and so hold that the trial court correctly ruled that the uninsured vehicle coverage provision of the policy issued by appellee in this case is not applicable under the facts of this case and creates no liability on the part of appellee to respond for the damages suffered by appellant. The judgment appealed is accordingly affirmed.
CARROLL, DONALD K., Acting C.J., and SPECTOR, J., concur.
NOTES
[1] F.S. § 627.0851, F.S.A.
[2] F.S. § 324.021(7), F.S.A.
[3] F.S. § 627.0851(1), F.S.A.
[4] Davis v. United States Fidelity & Guaranty Company of Baltimore, Md. (Fla. App. 1965), 172 So.2d 485, 486.
[5] United States Fidelity & Guaranty Company v. Byrum (1966) 206 Va. 815, 146 S.E.2d 246, 248.
[6] Macaluso v. Watson (La. App. 1966), 188 So.2d 178, 179.
[7] 26 A.L.R.3d 891, 892, § 3.
[8] Gerardi v. Carlisle (Fla.App. 1969), 232 So.2d 36, 38.