SPECTOR, Judge
(dissenting).
I respectfully dissent from the opinion of the majority of the court. The decision holds that a plaintiff in a personal injuries action may not sue the owner of a motor vehicle after he has concluded a separate suit against a permissive driver of the owned vehicle. The holding rests on the application of the doctrine of res adjudica-ta or estoppel as set out in 19 Fla.Jur., Judgments and Decrees, § 100.
The quoted language in the majority opinion is not applicable to the instant case. Gerardi v. Carlisle, 232 So.2d 36 (Fla.App.1970). In that case, discussing the concept of privity as it relates to an automobile owner and his permissive driver, the court distinguished that type of privity from that referred to in 19 Fla.Jur., Judgments and Decrees, § 100. Thus, it seems to me that the decision in Gerardi, supra, precludes the application of the privity doctrine as the basis for res adjudi-cata in cases involving successive suits against a permissive automobile driver and then the owner. I would reverse the summary judgment for the defendant for the following reason.
Appellant was plaintiff below in an action for injuries sustained when he collided with an automobile driven by appellee’s wife.[1] The complaint against appellee al *73 leged the same cause of action as that which was sued out against appellee’s wife with the exception that in the latter action appellant alleged the wife to be the driver and owner, whereas in this action the defendant husband’s alleged liability rests only on his ownership of the car driven by the wife.[2] Appellee filed his answer denying ownership of the car involved and further denied the allegation of negligence and the alleged consequences therefrom. By his answer, appellee further interposed a motion to dismiss appellant’s complaint contending that appellant’s earlier action against appellee’s wife which resulted in the judgment referred to above constituted an election of remedies so as to bar the instant action. Apparently no ruling was made on appellee’s motion to dismiss on the election of remedies ground; and that narrow question, although falling squarely within the purview of our decision in Ger-ardi v. Carlisle, supra, is not before us now.
In due course, appellant moved for a partial summary judgment on the issues of liability and quantum of damages, thus leaving as the sole issue for determination by the trial court the question of appellee’s ownership of the automobile driven by the wife at the time of the accident. The denial of said motion for summary disposition of the liability [other than the ownership issue] and damage questions forms the basis of appellant’s first point on appeal.
Appellant argues that since the nature of an automobile owner’s liability is derivative from the acts of the driver, a judgment settling the issues of liability and damage against the driver is res adjudicata or the basis of an estoppel by judgment as against the owner. Appellant’s theory underlying this argumentation would, if accepted, result in the automatic imputation against an automobile owner of any judgment rendered against a nonowning permissive driver, even if the owner was not a party to the action against the driver and thus had no opportunity to defend.
The primary authority relied on by appellant for this contention is the language found in 19 Fla.Jur., Judgments and Decrees, § 100, briefly defining res adjudicata as that doctrine whereby a final judgment rendered on the merits without fraud or collusion by a court of competent jurisdiction is conclusive of the questions in issue as to the parties and their privies in any other action. By designating appellee herein as being in privity with the defendant driver of his car in the earlier suit, appellant opts for the entry of an $89,750 judgment against appellee, less the $25,-747.38 already paid under the insurance policy, of course. My examination of the authorities advanced in support of this point fails to persuade me that the contention has merit. Although it was decided after the briefs and argument in the case at bar, our opinion in Gerardi v. Carlisle, 232 So.2d 36, is dispositive of appellant’s contention. In that case, the court, distinguishing the character of privity obtaining between an owner of a car and a permissive driver from that sufficient to support invoking the doctrine of res adjudicata, said at page 43:
“[6] Although admittedly the owner of a motor vehicle and the person operating it with his consent are in privity with each other under the doctrine of respon-deat superior, it is not that character of privity in which a judgment in favor of *74 the plaintiff in a suit against one tort-feasor will be conclusively binding on the plaintiff as to all issues in a subsequent suit against a joint tort-feasor. * * *"
After quoting from 19 Fla.Jur. 211 — 215, Judgments and Decrees, § 156, which states that there is no single, conclusive definition of a privy in cases involving res judi-cata, we concluded in Gerardi, at page 43, with the following:
“It seems clear to us that the doctrines of res judicata and estoppel by judgment do not operate to bar a plaintiff who has recovered a judgment against one tort-feasor from relitigating all issues in a subsequent suit against a joint tort-fea-sor. Those are the facts present in the case sub judice and render the theory espoused by appellee inapplicable.”
The second point raised by appellant relates to the correctness of the trial court’s ruling granting appellee a summary judgment because the latter assigned any cause of action he might have against his insurer for failure to settle appellant’s claim within the policy limits or otherwise exercising bad faith toward appellee as the insured under the policy. Appellee’s rights against his insurer, as aforesaid, were assigned in consideration of appellant’s agreement never to execute any judgment against appel-lee, received or to be received as the result of injuries suffered in the accident “caused by a car owned by M. J. Haynes, in the suit won against M. J. Haynes’ former wife or the suit soon to he brought against M. J. Haynes”. (Emphasis supplied.) The complaint in the action sub judice was filed the next day after the assignment was executed.
Appellee contends that appellant’s agreement not to execute any judgment he might obtain stands as a bar to the instant action. The agreement not to execute is held out by appellee to constitute a release or satisfaction of any claim appellant might have against appellee, or, in the alternative, the agreement not to execute is said to render the action sub judice frivolous or vexatious, if not champertous. The last contention appears to be disposed of by the decision in Nationwide Mutual Insurance Co. v. McNulty, 229 So.2d 585 (Fla.1970). I have examined the instrument embodying the agreement not to execute in this case in light of the holding in Atlantic Coast Line Railroad Company v. Boone, 85 So.2d 834 (Fla.1956), and find that it is not a release. Rather, it is in the nature of a covenant not to sue. The distinction being that the covenantor promises not to execute any judgment he might get against the covenantee, rather than promising not to sue altogether. Of course, I am not concerned with the question of whether the agreement is a release in the sense once material under the common law rule relating to release of one joint tortfeasor, since that rule was abrogated by the enactment of Section 54.28(1), Florida Statutes, now numbered Section 768.041, Florida Statutes, F.S.A. See Adler v. Segal, 108 So.2d 773 (Fla.App.1959).
The real issue presented is whether an agreement not to execute is a bar to further prosecution of an action, particularly when such an agreement is entered into prior to commencement of the action. I do not think it is a bar.
In McNulty v. Nationwide Mutual Insurance Company, 221 So.2d 208 (Fla.App.1969), the court upheld an action by a judgment creditor against a liability insurer for an excess judgment earlier obtained in a suit against an insured, notwithstanding that the said judgment creditor had given an agreement to satisfy the excess portion of any judgment obtained beyond the policy limits in consideration of an assignment of the insured’s cause of action, if any, against his insurer for bad faith in failure to settle. The decision of the appellate court was later upheld in Nationwide v. McNulty, 229 So.2d 585, by the Supreme Court. In the McNulty case, the court laid to rest the assignability of a *75 “bad faith” cause of action by an insured. See also Selfridge v. Allstate Insurance Company, 219 So.2d 127 (Fla.App.1969). In upholding such assignments, the court cited with approval Gray v. Nationwide Mutual Insurance Company, 422 Pa. 500, 223 A.2d 8 (1966), in which the court said:
“The possibility of collusion between a judgment holder and an insured is no way increased by an assignment. If the insured’s liability on the judgment is not affected by the assignment, the interests of the parties are similarly unaffected. Whether the action would be brought in the name of the policy-holder or in the name of the assignee, the policy-holder would be intent upon relieving himself of the excess judgment, and the assignee would be seeking to secure the balance due him. If the insured’s liability is terminated by the assignment, as in the present case, the possibility of collusion is more remote. Having been relieved of the judgment, the insured no longer has any pecuniary interest in the outcome of the litigation.”
Perhaps the circumstance which renders the agreement not to execute most objectionable in the eyes of appellee is the fact that the agreement was entered into before the action was commenced against the insured, rather than after a judgment had been obtained. The validity of an assignment of a bad faith claim against an insurer, as affected by the assignment being made before the institution of an action, does not appear to have been considered by the reported decisions of this jurisdiction. The primary reason appellee contends such an assignment is invalid is the claim that it tends to produce frivolous or vexatious actions leading to collusion between the injured plaintiff and the insured defendant. The same contention was considered by a California appellate decision in Critz v. Farmers Insurance Group, 230 Cal.App.2d 788, 41 Cal.Rptr. 401, 12 A.L.R.3d 1142. There the court considered an assignment and covenant not to execute similar to the one in this case and held such an agreement not to be a bar. Since the Critz court wrote a detailed analysis of the relative duties, obligations and motives of the parties to a personal injuries action where liability insurance comes into play, 1 think it appropriate to quote extensively from that well reasoned opinion as follows:
“A related contention is that the assignment and covenant not to execute upon the judgment violate public policy by imparting a collusive character to the personal injury suit. * * *
“ * * * Farmers Group has stipulated that it was aware of the assignment before Mrs. Critz’s personal injury action went to trial. Thus David Arnold’s [the insured defendant] position was not concealed from the insurance company or its trial counsel. Arnold was not paraded before judge and jury as a culpable defendant, following an agreement which exonerated him from negligence. Objective of the assignment agreement was not to procure from Arnold testimony favoring his adversary. (Cf., Pellett v. Sonotone Corp., supra, dissent of Traynor, J., 26 Cal.2d 705, at p. 715, 160 P.2d 783.) There is no claim that Arnold actually said or did anything which jeopardized defense of the lawsuit. Nothing in the assignment agreement impelled him toward false testimony. His motivation was to protect himself from potential personal liability flowing from the insurer’s rejection of the $10,000 settlement offer. Mrs. Critz’ motivation was to strengthen her position vis-a-vis an insurer which had forced her into the delay and expense of litigation. The alliance between these motivating forces did not result in a collusive lawsuit, either in terms of natural tendencies or actual results.
“While liability insurers are the frequent targets of inflated injury claims, it often happens that the injured claimant is constrained by financial necessity to sacrifice part of his claim’s value in the interest of an early cash settlement. The advantages of time and solvency are on the insurer’s *76 side. When medical expenses are high and the policy limit is low, pressure to settle is accentuated. When a limited liability insurer rejects an offer to settle a damage case at much less than its reasonably appraised value, it not only exposes its policyholder to the possibility of serious personal liability but also trades on the inferior economic position of the injured claimant. If an assignable claim exists at all, it exists only because the insurer has previously breached its obligation of good faith toward its policyholder.
‘Unless plaintiff as assignee can convince the trier of fact that the carrier in this case did not exercise good faith, plaintiff cannot prevail.’ (Martin v. Hartford Acc. & Indem. Co., supra, 228 A.C.A. 200, at p. 207, 39 Cal.Rptr. 342, at p. 347.) To uphold an equitable assignment under such circumstances does not supply the injured party with a disproportionate or unfair advantage. In our opinion, the present assignment is not violative of public policy if in fact a bad faith rejection had already occurred. If, on the other hand, the carrier was not guilty of bad faith, the plaintiff-assignee will lose the lawsuit regardless of the public policy aspects of the assignment.
“Insurance policy provisions frequently prevent assignment without consent of the insurer prior to a loss. (Greco v. Oregon Mutual Fire Ins. Co., 191 Cal.App.2d 674, 682, 12 Cal.Rptr. 802.) Defendant asserts that the Arnold-Critz agreement attempted to assign the policyholder’s rights before the latter had suffered any loss by an adverse judgment against him. The assertion is unavailing. A provision against assignment of rights under a policy does not preclude transfer of a cause of action for breach of the policy. (Comunale v. Traders & General Ins. Co., supra, 50 Cal.2d 654, at pp. 661-662, 328 P.2d 198.)
“One more contention should be noted. Defendant argues that the hold harmless clause, in effect a covenant not to execute against Arnold, prevented the latter from suffering any damage by reason of the personal judgment against him. If, as a trier of fact may find, the carrier violated its duty of good faith, the damage, however potential, occurred at that time. As noted in the Ivy case, supra, Ivy v. Pacific Auto. Ins. Co., 156 Cal.App.2d 652, at page 662, 320 P.2d 140, a covenant not to execute is not a release. (See also Pellett v. Sonotone Corp., supra, 26 Cal.2d 705, 160 P.2d 783.) It did not blot out the personal judgment against Arnold or extinguish his claim for breach of contract against the carrier.”
The appellant is not barred from proceeding with his action against the appellee by reason of the assignment and agreement not to execute involved herein. The summary judgment reviewed herein should be reversed.

. Appellant sued the wife in an earlier action arising from the same accident, which resulted in a judgment in appellant’s favor for $89,750. That judgment was partially satisfied by the wife’s liability insurance carrier by payment of $25,-747.38, the limits of the insurance policy. Subsequent to the partial satisfaction noted, appellant brought suit against the wife’s insurer to recover the balance of the aforesaid judgment on the ground of alleged bad faith of the insurer in not settling his claim against the insured wife within the policy limits. That suit was brought directly against the insurer by the insured’s judgment creditor. No *73 assignment was made to the appellant by the insured wife of her right to sue her insurer for negligent failure to settle the claim against her within the liability policy limits. The direct action was dismissed in the trial court, and we affirmed the dismissal. See Thompson v. Commercial Union Insurance Co. of New York, 237 So.2d 247 (1970). Our de-cisión in Thompson is presently pending review by certiorari in the Florida Supreme Court.

. At the time of these actions, the Haynes were no longer husband and wife, although that was their status at the time of the accident underlying both of appellant’s actions.