Hillsborough, }
Dec. 4, 1923. }

GEORGE H. McNAMARA v. MENDON A. CHAPMAN.

To an action against a servant by one injured through his sole negligence, a judgment in favor of the plaintiff against the master, with satisfaction or payment thereof duly tendered, is a bar.

CASE, to recover damages caused by the defendant's negligent operation of an automobile. The defendant pleaded specially that the negligence complained of was the same that was charged in a former suit against Frank Chapman as employer of the present defendant, in which there was a verdict and judgment for the plaintiff. It was agreed that the facts were as set forth in the plea. In the superior court, *Branch*, J., the plea was rejected, subject to exception.

It was agreed at the argument that the case might be considered on the basis that payment of the former judgment had been tendered and refused.

*Robert W. Upton* and *Alvin J. Lucier* (*Mr. Upton* orally), for the plaintiff.

*Tuttle, Wyman & Starr* (*Mr. Wyman* orally), for the defendant.

PEASLEE, J. The case presents certain questions concerning the respective liabilities of a master and his servant for the latter's unauthorized negligent acts, done in the course of the master's business, and of the correlative rights of the party injured by such negligence. The subject is one upon which there is but little authority in this jurisdiction. The decisions in other states and in England lack uniformity. Beyond the elementary rules that the master is liable under the maxim *respondeat superior*, and that the servant may be answerable for his own wrong in a suit by the injured party, or by the master who has been compelled to pay damages, there is little or nothing to be relied upon as an established common-law principle.

In some early cases the suggestion is found that the servant is not liable at all, though in general the authorities of that era place his non-liability upon an exaggerated view of the nature of non-feasance. 28 L. R. A. 433, note. It seems to have been thought that non-feasance as here used included all acts of omission. The late Chief Justice *Carpenter* is authority for the statement that as late as fifty

or sixty years ago this theory was approved by the full bench of the New Hampshire court, in an unreported decision rendered in a suit brought against an engineer to recover for damages caused by his negligent operation of a railroad train.

This view no longer prevails anywhere, and the rule of the servant's immunity as to acts of non-feasance is limited to acts which are merely breaches of duty owed to the master as distinguished from that owed to the complaining party. For the former he is not liable to a stranger to his contract, but for the latter he is. *Pittsfield &c. Company* v. *Company*, 71 N. H. 522, 534.

With the establishment of the rule that the servant is so liable, came the question whether he could be sued jointly with the master. The early view in England seems to have been that he could not be, although the cases where the question is discussed are disposed of on other grounds. *Michael* v. *Alestree*, 2 Lev. 172; *Whitamore* v. *Waterhouse*, 4 C. & P. 383.

In this country the cases are in direct conflict. In many jurisdictions such suits are permitted. The usual ground upon which the holding is put is that as the master and servant are both liable for the same act of negligence they may be joined as defendants. *Greenberg* v. *Company*, 90 Wis. 225; *Whalen* v. *Railroad*, 73 N. J. Law 192; *Mayberry* v. *Railway*, 100 Minn. 79; *Wright* v. *Wilcox*, 19 Wend. 343; *Phelps* v. *Wait*, 30 N. Y. 78.

On the other hand, it has been pointed out that the right to recover involves distinct and different questions as to each defendant, and it is accordingly held that a joint suit cannot be maintained. *Parsons* v. *Winchell*, 5 Cush. 592; *Mulchey* v. *Society*, 125 Mass. 487; *Campbell* v. *Company*, 62 Me. 552; *Bailey* v. *Bussing*, 37 Conn. 349; *French* v. *Company*, 76 O. St. 509; *Herman Berghoff &c. Co.* v. *Przbylski*, 82 Ill. App. 361; *Warwax* v. *Railway*, 72 Fed. Rep. 637. This rule has been recognized as law in this state (*Page* v. *Parker*, 40 N. H. 47, 68), but is no longer followed. *Fitzhugh* v. *Railway*, 80 N. H. 185.

The effect of a judgment either for or against the master or the servant in a several suit, when offered in defence of a subsequent suit against the other, has been variously treated. There seems to have been an idea that in some way it ought to be a defence, but the reason is not stated with any considerable distinctness.

In Rhode Island a case arose in which certain parties were sued for damage caused by their encumbering a highway. There was judgment for the defendants; and in a subsequent suit to recover for the same injury from the town it was held that the former judg-

ment was a defence because otherwise the defendants in the first suit, being liable over to the town, might be made to pay after they had obtained a judgment on the merits of the case. *Hill* v. *Bain*, 15 R. I. 75. While this is not a master and servant case, it involves the same principles concerning those charged by law with responsibility for the negligence of others. See also *Hearn* v. *Railroad*, 67 N. H. 320.

So in this state, the same idea was adopted as to the relation between a sheriff and his deputy: "The plaintiff might have sued the defendant for the act of Stebbins in taking the oats. But he had the right also to sue Stebbins himself, and this he elected to do. Having litigated the title to the oats with him, and failed, he ought to be precluded from trying the same matter in another suit against the defendant, on the ground that the defendant is responsible, and that he had a right of action against him also." *King* v. *Chase*, 15 N. H. 9, 19.

The leading case on the subject is *Emery* v. *Fowler*, 39 Me. 326. It holds that a judgment in favor of the employer is conclusive in a subsequent suit against the servant. While it is possible to distinguish it upon the ground that it involved suits for trespass to real estate, it has generally been treated as authority in cases involving other classes of torts. Freeman, Judgments, *s.* 179; Black, Judgments, *s.* 579. Attempts have been made to sustain these and other decisions upon grounds of privity and estoppel, but they do not satisfy the generally accepted tests. *Lamberton* v. *Dinsmore*, 75 N. H. 574.

The underlying reason which has moved the courts in these matters is nowhere better stated than in *Atkinson* v. *White*, 60 Me. 396, 397: "That the question involved in each suit is precisely the same, and to be proved by the same testimony, is beyond doubt. It is equally clear that the plaintiff is the same, and that he has had his day in court. He has had a full hearing upon the law and fact involved in the very question he now proposes to try again in another suit. He has had every privilege the law allows him, unless he is entitled to another hearing, simply because he is now attempting to enforce his claim against another defendant in name, indeed, but the same in interest."

In the present case the plaintiff asks that such a second trial be given him, and states several grounds therefor. His chief reliance is upon the proposition that the master and servant are joint tortfeasors. It is to be observed at the outset that in reality the master is not a tortfeasor at all. He is not a wrongdoer. If he were, he

could neither claim contribution from one jointly liable as he was, nor indemnity from one for whose acts he must answer, whereas in the present situation he could do either. *Nashua Iron &c. Co.* v. *Railroad,* 62 N. H. 159. But the fact that there is no joint liability is not necessarily determinative of the right to bring the present suit. The solution of the question depends rather upon the nature of the liability imposed upon the master.

As before stated, the master has done no wrong, but he is by law charged with a certain responsibility for the act of his servant. The law identifies the master with the servant for this purpose and makes the servant's act the master's. It was upon this ground that the plaintiff recovered his judgment against the master. He did not recover for any wrongful act of the master, but for the negligence of the servant imputed to the master.

The master not being morally guilty, his liability should extend no further than is necessary to give the aggrieved party redress for the wrong done by the servant. Technical or inequitable rules said to be applicable to joint tortfeasors and invoked in behalf of the present plaintiff are not applicable to the present situation.

Neither should undue hardship and expense be put upon the servant. If he were not permitted to discharge his liability to the plaintiff by the payment of the judgment already recovered against the master for the servant's act, he must be to the expense of defending the present action against him personally; and if he should prevail therein he would not be discharged, but must thereafter recompense the master for his reasonable expenses and what it might be found he ought to pay on account of the earlier suit, provided that in the master's suit against the servant the master were able to obtain a verdict that the servant was a wrongdoer. *Hubbard* v. *Gould,* 74 N. H. 25, 28. And if in the present suit against the servant a judgment were recovered by the plaintiff and paid, the servant would still be liable for the reasonable expenses of the former suit against the master. The rule here sought to be invoked would impose upon the servant a greater degree of responsibility than has been put upon any other wrongdoer.

If the plaintiff's claim were sound, precisely the same financial result would follow if the master had notified the servant to defend the earlier suit, and the servant had done so. The plaintiff could still have refused to accept payment of the judgment, and have put the servant to this added expense. Any supposed rule of law which compels a party to try the same question twice, and to be bound by

the worse of the two results, either directly or indirectly, is entitled to but scant respect.

The plaintiff has had a full and fair trial of his claim for compensation, resulting in a judgment in his favor which the defendant is ready and willing to pay. Unless there is some positive rule of law which forbids, this ought to be the end of the case. If the rule that in the case of joint wrongdoers the plaintiff may severally pursue one after another to judgment, refusing to accept tendered payment of the earlier judgments (*McDonald* v. *Nugen*, 118 Ia. 512; *Blann* v. *Crocheron*, 20 Ala. 320), is the law of this state, it ought not to be extended. It should not be applied to cases not clearly falling within its scope, nor when its application will impose an elsewhere unheard-of liability.

Cases where there is some personal fault of the master of course stand differently, and the injured party may recover of him on the independent ground of such wrong, while still seeking to hold the servant for his act for which no claim is made against the master. But where, as here, the doctrine of identity has been invoked as the foundation for a recovery, and the claimed identity has been established, there plainly ought to be an end of any future proceedings based upon a different and inconsistent situation.

The true foundation for the non-liability of the present defendant is not found in the doctrine of estoppel by judgment, nor in that of satisfaction obtained by the plaintiff from some other party. The plaintiff is debarred from maintaining the present suit because he had and has exercised an election. There was a single wrongful act, and it was the plaintiff's privilege to treat it as that of the actor or as that of the master. It is not at all like the relation of principal and surety, where by agreement one adds to the original and single liability of the principal. It is a case of substitution and not of addition. The master is charged, not because he has agreed to be a surety for the servant's act, but because the law says the act may be treated as that of the master.

"Although in fact guilty of no negligent act, the law makes the town responsible . . . for the negligence of A, as it makes the master responsible for the negligence of his servant." *Gregg* v. *Company*, 69 N. H. 247, 252.

The plaintiff in the suit against the master must establish a relation of the master to him. He cannot do this by showing the master's presence, for he was absent; nor can it be proved by authority conferred, for none was given. It can only be shown by resort-

ing to the legal fiction that the act of the servant was that of the master.

The plaintiff had his election to treat the master and servant as one and recover from the master, or to disregard their relation and recover from the servant. He could treat the servant's act as that of the master, but not as that of both master and servant. Such situations are not unknown in other phases of the law relating to acts done in a representative capacity. If an agent acts for an undisclosed principal, the other party to the transaction may, upon discovery of the facts, proceed against either; but having elected to proceed against one he cannot thereafter pursue the other. "He cannot maintain his action against both, nor, having elected with a knowledge of the facts to look to the agent, can he afterwards turn round and hold the principal." *Chandler* v. *Coe*, 54 N. H. 561, 568; *Elkins* v. *Railroad*, 19 N. H. 337, 342.

On the contract side, the reasonableness of the rule has been clearly seen, and it has been uniformly applied. The statements of the reasons for the rule in those cases are equally convincing here. "Granting that each was liable, both were not, for both could not be at one and the same time, since the contract could not be the personal contract of the agents, and yet not their contract but that of the principal. The vendor had a choice and was put to his election." *Tuthill* v. *Wilson*, 90 N. Y. 423, 428.

The conclusion in Massachusetts and elsewhere that the master and servant cannot ultimately be held liable jointly for the unauthorized torts of the servant, may be sound; but the true reason therefor is not any supposed difficulty involved in the right of the master to thereafter recover over from the servant, or in any technical rule as to joint or several suits. The real ground is that the liability of the master is one based upon a presumed identity. The plaintiff may treat the act as that of one or the other but not of both.

The fact that the master has been guilty of no wrong, has not been kept sufficiently in mind. Because he is charged with liability, it has therefore been broadly assumed that he was guilty of a tort in a personal sense. This is contrary to the fact. In the case of joint tortfeasors, although there is but a single damage done, there are several wrongs. The act inflicting injury may be single; but back of that, and essential to liability, lies some wrong done by each tortfeasor contributing in some way to the wrong complained of. *Carpenter* v. *Company*, 78 N. H. 118, 121. There is nothing in the

present situation in any way fairly comparable to that of joint wrongdoers.

The rule that payment or release of the cause of action against a joint tortfeasor is necessary to work a discharge of the other joint wrongdoer has no application. That rule is based upon the theory that the wrongs done by the several defendants may be treated as wholly independent one of the other. But the question here is one of election between two alternative defendants. Once that election has been made under such circumstances that it is complete and cannot be avoided, the result as to recovery is immaterial. In the case of joint tortfeasors the question is one of satisfaction for the wrong. In the present case, the question is not of satisfaction but of choosing the party to be held liable.

In this case, the plaintiff made his choice, his claim of identity prevailed and he has a judgment thereon. It may be that if the result of the former suit had been a judgment for the defendant upon the ground that identity was not shown, the plaintiff could have avoided being charged with having elected, because he had mistaken the facts as to identity. *Noyes* v. *Edgerly*, 71 N. H. 500. But where the judgment shows that there was no such error, that the facts were exactly as the plaintiff understood and claimed them to be, his election is complete and he is bound by it.

It is not necessary to decide whether, if the judgment against the master proved valueless, the plaintiff could treat his election as incomplete and sue the servant. It may be that if when he stood at the parting of the ways he chose a road that led to unexpected places, or ended in a *cul de sac*, he could retrace his steps because of the unexpected result. If the suit against the master ended in a verdict for him upon the ground of non-employment, or if the judgment proved worthless, there would be room for argument to the effect that the plaintiff had not chosen with full knowledge. But nothing of the sort appears here. The plaintiff has his verdict against the master, who is able to pay it and has offered to do so.

So, too, it may be that the plaintiff could join the master and servant as defendants in one suit, or bring suits against them severally at the same time. Our procedure is what justice and convenience require; and bringing a joint suit would not prevent a several trial if it ought to be had (*Fitzhugh* v. *Railway*, 80 N. H. 185), nor would the fact that the suits were several necessarily prevent a determination of the issues by a single trial. *Brooks* v. *Howison*, 63 N. H. 382. "A litigant should be accorded such remedies and

methods of stating his grievance as may be necessary 'to meet the meritorious contingencies of his case.'" *Sanborn* v. *Railroad,* 76 N. H. 65, 67; *Smith* v. *Bank,* 69 N. H. 254; *Hutt* v. *Hickey,* 67 N. H. 411.

In holding the plaintiff to the consequences of his election, there is no idea of compelling him to act without knowledge or to take chances. His right to choose remains open as long as there is just cause that it should be, but no longer. *Hutt* v. *Hickey, supra.* It should be preserved until he can be fully informed as to all the facts. This may involve a retention of that right until a trial of a suit against the master settles whether the master can be identified with the servant for the purposes of the claim presented. It may possibly be extended so as to permit the plaintiff to ascertain whether the first judgment against one of them is collectible. But it is entirely clear that there is no sound reason for extending it to a case like the present. For the reasons before stated, the choice is complete and the plaintiff is bound by it.

The complement of the rule that nothing short of payment, or a release of one joint tortfeasor, will discharge the other, is that "'When the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected in equity and good conscience that the law will not permit him to recover again for the same damages.' *Lovejoy* v. *Murray,* 3 Wall. 1, 17; *Cleveland* v. *Bangor,* 87 Me. 259, 264." *Carpenter* v. *Company,* 78 N. H. 118, 124; *Wheat* v. *Carter,* 79 N. H. 150. The same rule of equity and good conscience forbids the maintenance of the present suit. See also *Betcher* v. *McChesney,* 255 Pa. St. 394, where the same conclusion is reached as in the present case, and much of the same reasoning is approved.

The cases in this jurisdiction relied upon by the plaintiff are not applicable here. In *Fowler* v. *Owen,* 68 N. H. 270, it definitely appeared that the acts of the servant were done by the procurement and under the authority of the principal. They were both wrongdoers and of course were "jointly and severally liable." But this is very far from a holding that a master is a wrongdoer in fact when the only wrong is the unauthorized negligent act of his servant.

In *Hewett* v. *Association,* 73 N. H. 556, it was not held that a verdict for the servant did not exonerate the master from liability for the same alleged act of negligence. On the contrary, the decision upholding the verdict against the master is expressly put upon the ground that the parties elected to rest their case upon certain speci-

fied contentions which do not raise this question. The verdict against the master was sustained because "the hospital might be bound to warn the plaintiff before Mrs. Russell [the servant] had reached a satisfactory diagnosis." *Ib.* 568.

In the present case it appears, or is admitted, that the only wrong complained of is the negligent act of the servant at a time when the master was not present, that the master was sued therefor and a judgment was entered against him, and that payment of the judgment has been tendered. Upon these facts, the present suit against the servant for the same wrong cannot be maintained.

*Judgment for the defendant.*

All concurred.