317 So.2d 832 (1975)
Betty HINTON, Appellant,
v.
IOWA NATIONAL MUTUAL INSURANCE COMPANY and Steve Dellinger, Appellees.
No. 74-984.
District Court of Appeal of Florida, Second District.
July 23, 1975.
Richard R. Mulholland, Mulholland & Hapner, Tampa, and David A. Maney, Gordon & Maney, Tampa, for appellant.
John R. Bush, Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellees.
GRIMES, Judge.
Betty Hinton was involved in an accident with a truck owned by Ralph Quinlan and *833 driven by Steve Dellinger. Hinton brought a suit for personal injuries against Quinlan, Dellinger and Iowa National Mutual Insurance Company. During the trial of the case and before the jury retired, her attorney stated on the record that Hinton was taking a voluntary dismissal of her claims against Dellinger and Iowa National. The trial judge refused to recognize the right of the plaintiff to take a voluntary dismissal as to fewer than all of the defendants. The case was then submitted to the jury and a verdict was returned for the plaintiff in the amount of $1,715. Final judgment in this amount was entered for the plaintiff and against all three defendants. No appeal was taken from this final judgment.
The plaintiff declined a tender of payment of the judgment, and no satisfaction was given. Thereafter, she commenced a new action against Dellinger and Iowa National seeking damages for the same accident. The defendants filed pleas of res judicata, estoppel by judgment and collateral estoppel predicated upon the final judgment entered in the earlier lawsuit. The new suit was dismissed with prejudice, and Hinton appeals this order.

Absolute Right of Taking Voluntary Dismissal Against Less Than 
All of the Defendants
As authority for refusing to recognize the dropping of Dellinger and Iowa National as parties in the first case, the court below cited Scott v. Permacrete, Inc., Fla.App.1st, 1960, 124 So.2d 887; Cooper v. Carroll, Fla.App.3d, 1970, 239 So.2d 511, and Fears v. Lunsford, Fla.App.1st, 1974, 295 So.2d 323. In Scott, the court held that, standing alone, a notice of voluntary dismissal filed pursuant to Rule 1.35 RCP (the predecessor of current Rule 1.420) and directed to some but not all of the defendants was not effective to eliminate those parties as defendants in the case. The court said:
"... We are unable to agree with appellants' position on this point. The mentioned rule provides that a plaintiff may voluntarily dismiss his action without order of court by filing a notice of dismissal at any time before service by the adverse party of an answer or motion for summary judgment or decree. This rule has been construed as applicable only to a dismissal of the entire action or controversy as distinguished from a dismissal of any claim or cause of action against one or more, but less than all, of the defendants. The proper method of dropping parties defendant from a suit is to move for and procure an order of court dismissing the complaint as to the designated defendant or defendants as permitted by Rule 1.18, F.R.C.P."
At that time, the only reference in Rule 1. 18 to the dropping of parties called for obtaining an order of court. However, in 1968, Rule 1.18, which had then become Rule 1.250, was amended by the addition of the following pertinent language:
"(b) Dropping Parties. Parties may be dropped by an adverse party in the manner provided for voluntary dismissal in Rule 1.420(a)(1) subject to the exception stated in that rule... ."
Thus, while the old rule was explicit in requiring the entry of an order by the court as a condition precedent to the successful dropping of a party, the amended rule stated that an adverse party could be dropped in the manner provided for under Rule 1.420(a)(1).
Cooper reached the same conclusion as Scott and was decided two years after the amendment had been added to Rule 1.250. However, the opinion does not indicate whether it was considering the rule before or after its amendment. Fears is not directly on point because it involved one of two plaintiffs seeking to voluntarily dismiss her claim against all of the defendants. In any event, whatever support Fears provided for the action of the court *834 below was eliminated when the District Court's decision in Fears was recently quashed by the Supreme Court (Case No. 45,834, opinion filed June 1, 1975). In its Fears opinion, the Supreme Court approved a later decision of the same district court in deMaupassant v. Evans, Fla.App. 1st, 1974, 300 So.2d 313, which held that under Rule 1.420(a)(1) a plaintiff had a right to take a voluntary dismissal against less than all of the defendants prior to the retirement of the jury. Therefore, even though Rule 1.420(a)(1) still only refers to "actions" rather than "parties", it now appears settled that the reference in Rule 1.250 to dropping of parties pursuant to the provisions of Rule 1.420(a) is sufficient to authorize a plaintiff to take a voluntary dismissal against less than all of the defendants.

Failure to Appeal Prior Judgment
Even though Hinton was entitled to take a voluntary dismissal against Dellinger and Iowa National, this case must be affirmed for two reasons, each of which is sufficient unto itself. In the first place, the judgment entered in the prior case was against all of the defendants and was not appealed. Hence, the judgment became res judicata regardless of the error leading to its entry. Thus, in Lucy v. Deas, 1910, 59 Fla. 552, 52 So. 515, the court said:
"A void judgment is a nullity, and may be attacked collaterally; but a judgment is not void if the court as organized legally existed and had jurisdiction of the subject-matter and of the parties... . where the court is legally organized, and has jurisdiction of the subject-matter, and the adversary parties are given an opportunity to be heard by the actual or constructive service on them of notice of the litigation as required by law, any errors or irregularities, or even wrongdoing, in the proceedings, short of an illegal deprivation of an opportunity to be heard, will not render the judgment void."
Hinton seeks to avoid the import of this rule by asserting that the judgment was void as to Dellinger and Iowa National because the court lost jurisdiction of them when she declared her intention to take a voluntary dismissal. There is some support for this argument in Rich Motors, Inc. v. Loyd Cole Produce Express, Inc., Fla.App.4th, 1970, 244 So.2d 526, in which the plaintiff purported to take a voluntary dismissal pursuant to the authority of Rule 1.420. Thereafter, at the instance of the plaintiff, the trial court reinstated the action. In granting certiorari and quashing the order which reinstated the respondent's cause of action, the district court said:
"Since a trial court has no discretion under F.R.C.P. 1.420(a)(1)(i) in granting or denying a voluntary dismissal by a plaintiff, it follows, then, that a trial court has no authority to review a voluntary dismissal. A voluntary dismissal of an action by the plaintiff pursuant to F.R.C.P. 1.420(a)(1) serves to terminate the action and to divest the trial court of jurisdiction."
See also Modular Construction, Inc. v. Owen, Fla.App.3rd, 1972, 270 So.2d 753, and Meyer v. Contemporary Broadcasting Company, Fla.App.4th, 1968, 207 So.2d 325.
It must be noted that while these cases talk in terms of the court losing jurisdiction, in each case the dismissal was taken against all of the defendants in the case. Hence, it could be said that there was no longer any subject matter over which the court could exercise its jurisdiction. However, if the court automatically loses jurisdiction to the extent that any subsequent order is void, presumably it could not even enter the cost judgment specifically provided for in Rule 1.420(d). Of more significance is the fact that each of the cited cases was a direct appeal. None of these cases passed on the question of whether a judgment could be collaterally attacked for the failure to recognize the plaintiff's right to take a voluntary dismissal *835 against less than all of the defendants. We construe the holding of these decisions only to be that a plaintiff may take a voluntary dismissal without the necessity of obtaining a court order.
It is generally held that once a party is in court through legal process or by appearance, he is in legal contemplation still in court until the final disposition of the cause. Whitaker v. Wright, 1930, 100 Fla. 282, 129 So. 889. Once jurisdiction has been obtained, any orders pertaining to the party, even though erroneous, must be attacked on appeal at the risk of becoming final. Tervin v. State, 1934, 116 Fla. 633, 156 So. 627. If Hinton wished to overcome the effect of the final judgment being entered against Dellinger and Iowa National, it was incumbent upon her to appeal so as to obtain the removal of those parties from the judgment. Once that judgment became final, it was properly raised by a plea of res judicata in the new suit involving the same parties and the same subject matter.

Effect of Obtaining Prior Judgment Against Owner on Same Cause 
of Action
The second ground for affirmance is predicated on the fact that in the prior suit Hinton obtained a judgment against Quinlan on the same cause of action she now seeks to assert against Dellinger and Iowa National. Quinlan was liable only vicariously as a result of Dellinger's negligence. Hinton proved Dellinger's negligence and had her day in court on the issue of damages. Simply because she is dissatisfied with the amount of the jury award, should she now be entitled to another "bite at the apple"?
At the outset, it should be noted that where a plaintiff unsuccessfully sues the servant, he is barred from bringing a second action against the master predicated upon the servant's negligence. See, e.g., Carroll v. Hubay, 2d Cir.1959, 272 F.2d 767; Taylor v. Denton Hatchery, Inc., 1960, 251 N.C. 689, 111 S.E.2d 864; Restatement of Judgments § 96(1)(a) (1942). Likewise, once obtaining a judgment against the servant, a plaintiff is limited to the amount of his prior recovery in a second action which seeks to hold the master vicariously liable. See, e.g., Pinnix v. Griffin, 1942, 221 N.C. 348, 20 S.E.2d 366; All v. Delaware & H.R. Corporation, Sup. Ct. 1941, 176 Misc. 977, 29 N.Y.S.2d 439; Restatement of Judgments § 96(1)(b) (1942). In essence, the same principles apply in both situations. The question is whether the same result obtains when the first suit is against the master and the second is against the servant.
The point was considered in Racino v. Saxon, Fla.App.4th, 1969, 222 So.2d 274, in which the court stated:
"In cases involving motor vehicle collisions and liability arising therefrom, we construe the rule to be that if a plaintiff sues a driver and loses on the merits, the owner may raise this in defense to a subsequent action against him. So too, if a plaintiff sues the owner and loses, the driver may raise this in defense to a later suit against him... .
"The respondent exercised his opportunity to fully litigate his issues with the owner of the truck and chose not to include the driver as a defendant. This places him squarely within the above rule when the driver now pursues his independent claim seeking recovery."
A contrary conclusion was reached in Gerardi v. Carlisle, Fla.App.1st, 1969, 232 So.2d 36. The court held that the doctrines of res judicata and estoppel by judgment do not operate to bar a plaintiff who has recovered a judgment against an automobile owner on a theory of vicarious liability from bringing a second suit against the driver. The Restatement of Judgments § 96(2) (1942) supports this view.
More recently, however, the First District Court of Appeal seems to have had *836 second thoughts about Gerardi. In Phillips v. Hall, Fla.App.1st, 1974, 297 So.2d 136, the plaintiff recovered a personal injury judgment against an employer predicated upon the negligence of one of its employees which did not involve the use of a dangerous instrumentality. The plaintiff then sought to sue the employee on the same cause of action. The court held that since the master was only vicariously liable for the servant's negligence under the doctrine of respondeat superior, the plaintiff could not sue the servant after having elected to sue and having obtained a collectible judgment against the master. The court distinguished its holding from Gerardi by saying that when an automobile owner entrusts a dangerous instrumentality to a driver who operates it in a negligent manner the owner becomes a party to the driver's negligence. In a special concurring opinion, Judge Boyer questioned the wisdom of Gerardi and suggested that an owner who merely lets someone else drive his car has not committed any wrong which would make him a true joint tortfeasor with his negligent driver. Judge Boyer observed that he concurred with the rationale of Gerardi only because of the doctrine of stare decisis.
In Phillips, the court quoted at length with approval from McNamara v. Chapman, 1923, 81 N.H. 169, 123 A. 229. On facts similar to the case sub judice, the New Hampshire court held that a plaintiff who had obtained a judgment against an automobile owner, but who had refused tender of payment, could not bring a second action against the driver. The New Hampshire court said:
"The true foundation for the nonliability of the present defendant is not found in the doctrine of estoppel by judgment, nor in that of satisfaction obtained by the plaintiff from some other party. The plaintiff is debarred from maintaining the present suit because he had and has exercised an election. There was a single wrongful act, and it was the plaintiff's privilege to treat it as that of the actor or as that of the master... .
* * * * * *
"In holding the plaintiff to the consequences of his election, there is no idea of compelling him to act without knowledge or to take chances. His right to choose remains open as long as there is just cause that it should be, but no longer. Hutt v. Hickey, supra. It should be preserved until he can be fully informed as to all the facts. This may involve a retention of that right until a trial of a suit against the master settles whether the master can be identified with the servant for the purposes of the claim presented. It may possibly be extended so as to permit the plaintiff to ascertain whether the first judgment against one of them is collectible. But it is entirely clear that there is no sound reason for extending it to a case like the present. For the reasons before stated, the choice is complete, and the plaintiff is bound by it."
In Marange v. Marshall, Tex.Civ.App. 1966, 402 S.W.2d 236, the court held that when the plaintiffs obtained a personal injury judgment against an automobile owner they were precluded from bringing a subsequent suit against the driver. The majority holding was predicated upon theories of res judicata and estoppel by judgment as well as the theory of election. A concurring judge rested his views solely on election of remedies. On res judicata and estoppel by judgment, the court observed:
"The appellee was not a party in haec verba in the prior case, but in accordance with these and many other authorities, he was in actuality as though he was a party defendant in the prior action. It was his negligence that supported the jury verdict in the prior action. We therefore conclude that res judicata urged in the court below was a part of the structure of the bar that protects the appellee in this appeal, similar in effect to the rule of estoppel by judgment. *837 Technical discussion of estoppel by judgment merges into the rule of res judicata and, in the interest of brevity, we only pause to observe that in our opinion the prior judgment, * * * where the relationship was undisputed and the action was purely derivative and entirely dependent upon the doctrine of respondeat superior, * * * estops the appellants from urging their case in a second time by the pretext of avoiding the rule by naming an adventitious different defendant, whose negligence proved and supported the prior judgment."
With respect to election of remedies, the court said:
"Was there a binding election by the appellants when they brought the prior action, that bars them from making a further election as to parties defendant? When the prior action was filed, appellants had their choice of parties defendant, the employer, the employee, or both. Since, however, both were in privity, to the extent stated above, their selection in the prior action was both binding and exclusive, when once made and final judgment obtained and satisfaction legally tendered. It was optional with them which one, or the other, or both, but did not operate to reserve to them a future action as to the one not first selected as party defendant under these facts. McNamara v. Chapman, 1923, 81 N.H. 169, 123 A. 229, 31 A.L.R. 188. Public policy supports the reasoning of the several rules of law, that the prior action in this case bars the second action. Public policy demands that this be so, because it is only fair and right and just, and avoids a multiplicity of suits. Were it otherwise, the courts could be cluttered with retrials and there would be no finality to litigation... ."
In Lober v. Moore, 1969, 135 U.S.App. D.C. 146, 417 F.2d 714, the plaintiff had suffered a prior judgment against her in a suit brought against a taxicab company for injuries received while riding as a passenger in one of its taxicabs. The Court of Appeals affirmed the dismissal of a new suit against the taxi driver on the ground that the prior judgment foreclosed relitigation of the issues previously tried. The court said:
"We need not, however, enter the debate on the relative merits of mutuality and nonmutuality, or explore the question whether either deserves exclusivity in this jurisdiction. For mutuality is not iron-bound in the law of res judicata but, like so many other broad legal concepts, is subject to well defined exceptions. One such exception obtains where a defendant's responsibility is derivative or secondary and it has been judicially determined that the situation is lacking in one or more of the conditions giving rise to it. Consequently it is settled that a judgment exonerating a servant or agent from liability bars a subsequent suit on the same cause of action against the master or principal based solely on respondeat superior. And conversely, it is the prevailing rule in the federal and the state courts that a judgment excusing the master or principal from liability on the ground that the servant or agent was not at fault forecloses a subsequent suit against the latter on the same claim."
Thus, it appears that upon varying theories, the weight of authority is on the side of barring a plaintiff from relitigating his claim against the servant when a judgment has been entered in a prior suit brought against the master involving the same issues. The authors of Corpus Juris Secundum (50 C.J.S. Judgments § 757, p. 279) state the rule as follows:
"... While a person injured by the tort of a servant may bring suit against either the master or servant, a recovery against the master has been held to bar a subsequent action against the servant, and a recovery against the servant has been held to bar a subsequent action against the master, or, at least, to fix the *838 maximum limit of the master's liability; and, where plaintiff in an action against an employee is defeated on the merits, the judgment is generally regarded as a bar to a subsequent action against the employer, and vice versa, at least when the master is not guilty of any independent or concurrent wrong, but must be held, if at all, under the doctrine of respondeat superior... ."
In most, if not all, of the cases from other jurisdictions, the master was vicariously liable for the servant's conduct because the servant was acting within the scope of his employment rather than on a dangerous instrumentality theory. However, we see no logical reason for having a different rule where the vicarious liability occurs as a result of the negligent operation of an automobile as contrasted with other types of negligent conduct, particularly since the dangerous instrumentality doctrine is grounded upon the theory of respondeat superior. May v. Palm Beach Chemical Company, Fla. 1955, 77 So.2d 468. Furthermore, we can perceive of no valid reason why one should be permitted to have successive suits against an owner and a driver when, at the same time, he is prohibited from maintaining the second suit where the sequence of defendants is reversed.[1] Aside from the public policy considerations against the multiplicity of actions, there is a basic unfairness in permitting one party to relitigate the same issues in a second suit because he is dissatisfied with the recovery obtained in the first. Therefore, we hold that where one obtains a collectible judgment from an automobile owner who is liable only because of the negligence of his driver, the plaintiff has made an election which precludes him from prosecuting a second action against the negligent driver.[2]
Accordingly, the judgment is
Affirmed.
McNULTY, C.J., and BOARDMAN, J., concur.
NOTES
[1] The reason normally advanced for this distinction is that permitting a second suit against a driver will not affect the owner's right of subrogation against the driver, whereas allowing a second suit against an owner will interfere with this right. See Restatement of Judgments § 96, comment (d) (1942).
[2] If the first judgment were not collectible, the plaintiff could sue the automobile driver for a sum not to exceed the amount of the first judgment.